969 F.Supp. 540 (1997)
Ronald R. MARION, Plaintiff,
v.
HAZELWOOD FARMS BAKERIES, INC. and Supervalu Inc., Defendants.
No. 4:97 cv 01251 SNL.
United States District Court, E.D. Missouri, Eastern Division.
July 16, 1997.
*541 Harry B. Wilson, Thomas J. Palazzolo, Husch and Eppenberger, St. Louis, MO, Ronald L. Greenman, Jon Stride, Tonkon Torp Galen, Marmaduke and Booth, Portland, OR, for Plaintiff.
Robert W. Stewart, Stanley G. Schroeder, Sr., McMahon and Berger, St. Louis, MO, for Intervenor.

ORDER
LIMBAUGH, District Judge.
This matter is before the Court on the Defendants' Motion for Preliminary Injunction (# 10).
The Plaintiff initiated this cause of action by filing a two count complaint against defendant Hazelwood Farms Bakeries, Inc. ("Hazelwood") on June 16, 1997. The Complaint seeks a Declaratory Judgment, pursuant to 28 U.S.C. § 2201, that a covenant not to compete entered into by the parties is non-binding, and damages for intentional interference with prospective business relations.
On June 18, 1997, defendant Supervalu Inc. ("Supervalu") filed a Motion to Intervene. Supervalu and Hazelwood (collectively "Defendants") also filed a verified Counter-claim seeking a Declaratory Judgment, pursuant to 28 U.S.C. § 2201, that the various covenants not to compete entered into by the parties were valid, and a Motion for Preliminary Injunction and Temporary Restraining Order. On June 20, 1997, the Court granted Supervalu's Motion to Intervene and denied the Defendants' request for a Temporary Restraining Order.
On June 26, 1997, the Court heard arguments on the Motion for Preliminary Injunction.
The Defendants seek to enjoin the Plaintiff from accepting employment in violation of the covenants not to compete. They also seek an order directing the parties to resolve the dispute through arbitration and staying all further proceedings in this matter pending completion of arbitration.
The Eighth Circuit has identified four factors for the Court to consider in determining whether to grant injunctive relief: 1) the threat of irreparable harm to the movant; 2) the balance between this harm and the injury that granting the injunction will inflict on the other party; 3) the likelihood of success on the merits; and 4) the public interest. Dataphase Sys., Inc. v. CL Sys., Inc., 640 F.2d 109, 113 (8th Cir.1981) (en banc). "The party seeking the injunction has the burden of establishing these factors." Davis v. Francis Howell School District, 104 F.3d 204, 205 (8th Cir.1997); Modern Computer Sys., Inc. v. Modern Banking Sys., Inc., 871 F.2d 734, 737 (8th Cir.1989).
The Defendants' are in the business of wholesaling frozen dough. The testimony adduced at the preliminary injunction hearing indicates that this business is highly competitive. There are only a few players in the market and everyone is competing for the same accounts. Furthermore, because the product sold is essentially fungible, customer contacts, marketing strategy and price may represent a business' only advantage. Accordingly, the Defendants carefully drafted their covenants not to compete for the specific purpose of preventing a former employee, like the Plaintiff, from accepting employment with one of their competitors.
Should the Court decide not to enforce the covenants not to compete, the Defendants' employees would be free to work for the Defendants' competitors, taking with them *542 knowledge of the Defendants' business practices, and perhaps even stealing some of the Defendants' business. The Court therefore concludes that threat of irreparable harm to the Defendants is substantial.
The injury to the Plaintiff if the injunction is granted, however, is also substantial. He has worked in this field for almost thirty years. Although the Defendants maintain that the covenants not to compete are only in effect for one year, and that the Plaintiff has been offered suitable employment in other non-competing businesses, the Plaintiff certainly has an interest in accepting employment in the field of his choice. Furthermore, the testimony at the preliminary injunction hearing indicated that the only comparable position offered to the Plaintiff in which he would not have to move from his current home was with one of the Defendants' competitors. The Court therefore concludes that the injury to the Plaintiff if the injunction is granted is also substantial.
The public interest prong of the analysis also fails to separate the parties' claims. While there is certainly a public interest in enforcing valid contracts, there is an equally strong interest in protecting freedom of choice with respect to employment decisions.
Accordingly, the resolution of the Defendants' Motion for Preliminary Injunction hinges on the likelihood of their success on the merits. The Court must be mindful, however, not to reduce this analysis to a wooden application of a mathematical probability test. Dataphase, 640 F.2d at 113. Rather, "the question is whether the balance of equities so favor the movant, that justice requires the court to intervene to preserve the status quo until the merits are determined." Id.; see also General Mills, Inc. v. Kellogg Co., 824 F.2d 622, 624-625 (8th Cir. 1987) ("the essential inquiry in weighing the propriety of issuing a preliminary injunction is whether the balance of other factors tips decidedly toward the movant and the movant has also raised questions so serious and difficult as to call for more deliberate investigation."). Unfortunately, the Defendants have failed to carry their burden with respect to this issue.
Generally, covenants not to compete are enforceable under Missouri law so long as they are "reasonably necessary to protect the employer's legitimate interests and reasonable as to time and geographical scope," Superior Gearbox Co. v. Edwards, 869 S.W.2d 239, 247 (Mo.App.1993). This, however, is not the ordinary case in which this issue arises.
As a preliminary matter, it is important to note that the Plaintiff did not voluntarily leave his employment. On the contrary, he was fired. Furthermore, as part of his termination, Hazelwood asked him to sign an "Offer of Compromise, Separation Agreement and General Release" (the "Separation Agreement"). Ex. 2 to Pl.'s Compl.
The Separation Agreement states that it is "made and entered into" by the Plaintiff, Hazelwood and "any and all affiliated entities." Ex. 2 to Pl.'s Compl. at 1. There was testimony at the preliminary injunction hearing that Supervalu is an entity affiliated with Hazelwood. The Court therefore concludes that Supervalu is a party to the separation Agreement, and that the Separation Agreement is enforceable against both defendants.[1]
The Separation Agreement also states that it was intended "to settle all issues, differences and claims between [the parties] that might arise out of [the Plaintiff's] employment with [Hazelwood], and [the Plaintiff's] termination from such employment." Ex. 2 to Pl.'s Compl. at 1.
Notwithstanding the Defendants' arguments to the contrary, the non-compete claims raised in this case clearly arise out of the Plaintiff's employment with Hazelwood. But for his employment, the Plaintiff would have never received the stock options which contained the covenants not to compete.
The Defendants admit that the stock options were granted "as additional compensation for services rendered." Defs.' Mem. in Supp. of Defs.' Mot. for T.R.O. and Prelim. *543 Inj. at 2. Moreover, the stock options at issue were only available to the Defendants' employees. Indeed, both stock options refer to the optionee as "employee" throughout the non-compete provisions. Therefore, without the Plaintiff's employment in the first instance, the non-compete issue never arises.
Furthermore, the language used in the Separation Agreement is certainly broad enough to encompass the Defendants' non-compete claims. As noted above, the Separation Agreement was intended to "settle all issues, differences and claims between [the parties]" Ex. 2 to Pl.'s Compl. at 1. (emphasis added).
The Defendants' argument that the Separation Agreement was not a "general release" and only released claims for damages is unavailing. The Separation Agreement was titled "Offer of Compromise, Separation Agreement and General Release." (emphasis added). Moreover, the "damages" language cited by the Defendants at best creates an ambiguity. It is well settled under Missouri law that ambiguities in a contract are construed against the drafter. Graue v. Mo. Property Ins. Placement, 847 S.W.2d 779, 785 (Mo.banc 1993) ("Where a contract is fairly open to two or more interpretations, that construction will be adopted which is against the one who prepared the contract."); Linnenbrink v. First Nat. Bank, 839 S.W.2d 618, 622 (Mo.App.1992) ("the general rule [is] that an ambiguous contract should be construed in favor of the party who merely signed it and against the document's drafter").
Finally, the Defendants' argument that the covenants not to compete were not expressly waived in the Separation Agreement is equally unavailing. The Separation Agreement expressly included a provision barring the Plaintiff from disclosing any confidential or proprietary information. Ex. 2 to Pl.'s Compl. at 2. Similarly, the Separation Agreement expressly reserved any claims for "knowingly fraudulent or deliberately dishonest acts." Ex. 2 to Pl.'s Compl. at 2. The Defendants certainly could have also included a non-compete provision in the Separation Agreement.
Accordingly,
IT IS HEREBY ORDERED that the Defendants' Motion for Preliminary Injunction (# 10) is DENIED.
NOTES
[1] Although no such evidence was presented at the preliminary injunction hearing, it is reasonable to conclude that Hazelwood had apparent authority to act on behalf of Supervalu. See e.g., Earl v. St. Louis University, 875 S.W.2d 234, 238-39 (Mo.App.1994).