TRIARCH INDUSTRIES,
INC., Appellant,

v.

Paul A. CRABTREE, d/b/a Crabtree
Painting, Inc., Respondent.

No. SC 86107.

Supreme Court of Missouri,
En Banc.

April 5, 2005.

Susan Eisenbraun, David A. Kraft, Art J. Neuhedel, Ronald S. Weiss, Kansas City, for Appellant.

Martin M. Meyers, James L. Baker, Kansas City, for Respondent.

LAURA DENVIR STITH, Judge.

Triarch Industries, Inc., appeals the trial court's denial of its motion to compel Paul Crabtree to arbitrate the parties' contract dispute. The trial court's judgment is affirmed. The contract gave Triarch the option of choosing either to litigate or to arbitrate any dispute. Triarch chose to litigate and filed suit in the Jackson County Circuit Court. The contract did not give it a right to change its mind and compel arbitration once it had first chosen to litigate its dispute with Crabtree. Having made its choice, it was bound by it. Because of its resolution of this issue, the Court does not reach Crabtree's arguments that the arbitration provision is unenforceable because it lacks mutuality and is unduly vague because it permits Triarch to unilaterally set all rules governing arbitration.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In June of 2000, Triarch Industries, Inc., a Texas-based corporation, entered into a "Qualified Applicator Agreement" with Paul Crabtree, doing business as Crabtree Painting, Inc., in Kansas City, Missouri. The contract, drafted by Triarch, appointed Crabtree as a "Factory Qualified Applicator" of Triarch's paint products and stated that Crabtree would pay Triarch for materials purchased "in accordance with Triarch's written conditions of sale and credit terms by check or credit card."

Triarch filed a petition in the Circuit Court of Jackson County in August 2001, alleging that Crabtree failed to pay money owed on an open account for merchandise supplied by Triarch under the contract. Crabtree filed an answer in October 2001, alleging that Triarch had sent defective and non-conforming goods that were unusable for their intended purpose. In April 2002, Crabtree filed a counterclaim in which it sought reimbursement for the allegedly non-conforming goods that Triarch had supplied. With its counterclaim, Crabtree served requests for admissions, followed shortly by Crabtree's first set of interrogatories and first request for production of documents.

In May 2002, after receipt of Crabtree's discovery requests, Triarch filed a motion to compel arbitration and to stay the litigation. It based the motion to compel on an arbitration clause contained within the "Conditions of Sale" attached to the parties' "Qualified Applicator Agreement." The arbitration clause states in full:

*ARBITRATION OF DISPUTES:* Any controversy or claim arising out of this contract or the breach thereof may, at Seller's option, be referred to non-binding mediation under rules of Seller's choice. If mediation does not result in settlement of the dispute, (or if Seller does not elect to pursue mediation), Seller shall have the right to refer the dispute to binding arbitration under rules of its choice, or to commence litigation.

Crabtree opposed the motion to compel arbitration. It argued that the arbitration clause was not enforceable because it was too one-sided to constitute an agreement to arbitrate and that the provision permitting Triarch to set all rules governing arbitration made the clause too vague and unconscionable to be enforced. Crabtree alternatively argued that the final part of the arbitration clause merely gave Triarch the right to make an initial choice whether to seek arbitration or to commence litigation and that, having chosen to commence litigation, it was bound by its election.

The trial court held that Triarch was not entitled to compel arbitration and overruled its motion. Triarch appealed. Following a decision by the Court of Appeals, Western District, this Court granted transfer. Mo. Const. art. V, sec. 10.

## II. ANALYSIS OF ARBITRABILITY OF DISPUTE

### A. Appealability of Denial of Motion to Compel Arbitration.

■ The question of whether Triarch's motion to compel arbitration should have been granted is one of law, to be decided by this Court *de novo*. *Dunn Indus. Group, Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 428 (Mo. banc 2003), *citing, Drake Bakeries, Inc. v. Local 50*, 370 U.S. 254, 256, 82 S.Ct. 1346, 8 L.Ed.2d 474 (1962). The Federal Arbitration Act (the FAA) requires courts to enforce a valid contractual agreement to arbitrate if it is contained in a contract that comes within the FAA's purview. 9 U.S.C. sec. 2 (1999).[1] The FAA also provides that an order denying a motion to compel arbitration under such a contract is subject to immediate appellate review. 9 U.S.C. sec. 16(a)(1)(B). There is no dispute that the contract between Triarch and Crabtree is governed by the FAA, or that Triarch was entitled to appeal the trial court's denial of its motion to compel arbitration.[2]

### B. Enforceability of Arbitration Clause Providing Only Seller with Right to Choose and Set all Rules of Arbitration.

Crabtree attacks the existence of an agreement to arbitrate in the first instance, arguing that the purported arbitration clause is invalid because it is unilateral rather than mutual, giving sole authority to Triarch to decide to arbitrate and set the rules for arbitration. The courts of other jurisdictions have come to varying conclusions as to the validity of such non-mutual agreements to arbitrate. This results from the fact that the question whether the agreement to arbitrate must be mutual or can be unilateral is determined by application of state contract principles rather than as a matter of federal statutory law. Robert Hollis et al., *Is State Law Looking for Trouble? The Federal Arbitration Act Flexes its Preemptive Muscle*, 2003 J. Disp. Resol. 483–89.

As Crabtree notes, many state courts, and federal courts applying state law, have invalidated similar non-mutual arbitration

---

1. All federal statutory references are to the United States Code 1999, unless otherwise indicated. Section 2 of the FAA specifically provides that an arbitration agreement contained in a contract involving commerce shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract. The remaining provisions of the FAA are set out in 9 U.S.C. sec. 1 et seq.

2. Section 435.440.1, RSMo 2000, a part of the Missouri Uniform Arbitration Act (MUAA), provides for immediate appeal from an order denying a motion to compel arbitration. Because the contract falls within the FAA, Triarch did not rely on the MUAA, however. *See Mueller v. Hopkins & Howard, P.C.*, 5 S.W.3d 182, 187 (Mo.App. E.D.1999).

provisions because they are so one-sided as to be illusory or unconscionable and, therefore, are unenforceable under applicable state law. *See, e.g., Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1219 (10th Cir. 2002), and other cases cited in Hollis et al., *State Law*, 2003 J. Disp. Resol. at 483–89.[3] Other courts have upheld such clauses on the basis that the particular state's law does not require mutuality if there is otherwise sufficient consideration for the agreement considered as a whole.[4] *Id.* Missouri has not addressed this issue in the context of an arbitration clause.

Crabtree also argues that the clause is so vague that it is unenforceable even if mutuality were not required under Missouri law, noting that the clause is just that, a single clause. None of the rules governing arbitration are set forth. Instead, the contract simply provides that Triarch has the unilateral right to "refer the dispute to binding arbitration *under rules of its choice*" (emphasis added). In support, Crabtree cites to cases such as *Harold Allen's Mobile Home Factory Outlet, Inc. v. Butler*, 825 So.2d 779, 785 (Ala. 2002), and *Burch v. Second Judicial District Court*, 118 Nev. 438, 49 P.3d 647, 650–51 (2002), which invalidated arbitration clauses allowing one party sole power to appoint arbitrators or to decide rules of arbitration.

■ In Missouri, where an agreement is silent as to certain necessary matters concerning the arbitration, such as how arbitrators will be appointed, arbitrators' right to exercise authority, notification of their award, and payment of fees and expenses, Missouri will imply such terms. *See, e.g.,* secs. 435.360 to 435.395, RSMo 2000. The applicability of these provisions is not clear, however, where, as here, the contract is not completely silent as to the missing terms, but rather purports to give one party sole authority to set whatever terms it wishes.

While these and related issues raise serious concerns about the enforceability and conscionability of the arbitration clause in the parties' agreement, this Court need not resolve those issues here. For, whether or not this Court were to hold that the arbitration clause was enforceable and was not unconscionable, the trial court did not err in denying Triarch's motion to compel arbitration because the contract did not give Triarch the right to demand arbitration.

## C. The Contract Did Not Entitle Triarch to Compel Arbitration.

The trial court denied Triarch's motion to compel arbitration on the basis that the arbitration clause did not give Triarch the right to compel arbitration once it chose to file suit. Triarch argues that this was error, noting that the FAA represents a strong federal policy in favor of arbitration

3. *See, e.g., Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1173 (9th Cir.2003) (one-sided arbitration agreement is unconscionable and unenforceable); *Iberia Credit Bureau v. Cingular Wireless LLC, et al.*, 379 F.3d 159, 169–70 (5th Cir.2004) (one-sided arbitration clause unenforceable due to unconscionability); *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 315–16 (6th Cir.2000) (arbitration agreement lacked mutuality and was therefore illusory and enforceable); *Simpson v. Grimes*, 849 So.2d 740, 749, (3d Cir.2003) (accord).

4. *See, e.g., Doctor's Assocs., Inc. v. Distajo*, 66 F.3d 438, 453 (2d Cir.1995) (one-sided arbitration clause is not invalid for lack of mutuality if there is consideration for the entire agreement); *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 181 (3d Cir.1999) (applying Pennsylvania law and enforcing a one-sided arbitration clause because there was adequate consideration by both parties in underlying contract).

and requires that any doubts regarding arbitration should be resolved in its favor. *Dunn,* 112 S.W.3d at 427, 429. *See also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

Although there is a policy favoring arbitration, "it does not disregard the intent of the contracting parties as evidenced by their agreement." *Keymer v. Mgmt. Recruiters Int'l, Inc.,* 169 F.3d 501, 505 (8th Cir.1999). The FAA places arbitration agreements on an equal footing with other contracts, and courts will examine arbitration agreements in the same light as they would examine any contractual agreement. *Id.* at 504. *See also Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 24, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991); *Perry v. Thomas,* 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987).

This means that, in determining whether the parties have entered into a valid agreement to arbitrate, the usual rules of state contract law and canons of contract interpretation apply. *Dunn,* 112 S.W.3d at 428.[5] The guiding principle of contract interpretation under Missouri law is that a court will seek to ascertain the intent of the parties and to give effect to that intent. *Butler v. Mitchell–Hugeback, Inc.,* 895 S.W.2d 15, 21 (Mo. banc 1995). The intent of the parties to a contract is presumed to be expressed by the ordinary meaning of the contract's terms. *See J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club,* 491 S.W.2d 261, 264 (Mo. banc 1973). If the contract is unambiguous, it will be enforced according to its terms. If ambig-

uous, it will be construed against the drafter, as is the case with other contracts under Missouri law. *Keymer,* 169 F.3d at 504.

Triarch claims that it retained the right under the contract to compel arbitration even after it chose to commence litigation in Jackson County Circuit Court. In support, it cites cases holding that a party will not be held to have waived its right to arbitrate unless the party opposing arbitration shows that the one seeking arbitration: "1) had knowledge of the existing right to arbitrate, 2) acted inconsistently with that right, and 3) prejudiced the party opposing arbitration." *Getz Recycling, Inc. v. Watts,* 71 S.W.3d 224, 229 (Mo.App. W.D.2002). Here, Triarch argues, Crabtree failed to show any prejudice resulted to it from the fact that Triarch did not file its motion to compel arbitration until a few months after it filed suit.

Triarch's arguments might be well-taken if Crabtree's argument were that Triarch waived an existing contract right to arbitrate by failing to assert that right in a timely manner.[6] This is not Crabtree's argument. Crabtree's argument is one of contract construction, not waiver. It argues that the contract itself provides that once Triarch chooses to file suit, it has no further right to arbitrate. It is not a matter of waiver of a right to arbitrate, but of lack of a contractual right to arbitrate in this circumstance. Thus, the facts that Triarch knew of the right to arbitrate and acted inconsistently with it, and the question whether any prejudice resulted to

---

**5.** *See also State ex rel. PaineWebber, Inc. v. Voorhees,* 891 S.W.2d 126, 128 (Mo. banc 1995); *Missouri & Northern Arkansas R.R. Co. Inc. v. Branson Scenic Ry., Inc.,* 3 S.W.3d 869, 871 (Mo.App. S.D.1999).

**6.** *See, e.g., Stifel, Nicolaus & Co., Inc. v. Freeman,* 924 F.2d 157, 158 (8th Cir.1991);

*Brookfield v. Tognascioli, et al.,* 845 S.W.2d 103, 106 (Mo.App. W.D.1993); *McCarney v. Nearing,* 866 S.W.2d 881, 890 (Mo.App. W.D. 1993) (sufficient prejudice to the party opposing arbitration must be shown before arbitration will be deemed to have been waived).

Crabtree from Triarch's decision to commence litigation rather than arbitrate initially, are irrelevant if the contract did not give Triarch the right to compel arbitration in the first place.

 These principles are directly applicable here. Looking to the plain terms of the contract, Triarch did not have a right to compel arbitration at the time it filed its motion to compel. The arbitration clause states in relevant part:

> If mediation does not result in settlement of the dispute, (or if Seller does not elect to pursue mediation), *Seller shall have the right to refer the dispute to binding arbitration under rules of its choice, or to commence litigation.*

(emphasis added). Triarch did not elect to pursue mediation. The contract plainly states that in such a case, Triarch has the right to refer the dispute to binding arbitration *or* to commence litigation.[7] Triarch chose to exercise its contractual right to commence litigation. Once faced with Crabtree's counterclaim and discovery requests, it apparently regretted that choice and wanted to refer the dispute to binding arbitration instead. The contract did not so permit, however. While courts look favorably upon clauses entitling a party to arbitration, this does not mean that a court will create ambiguity where, as here, none exists, or that it will read a right to arbitrate into a contract where, as here, the contract does not provide such a right.

*AJM Packaging Corp. v. Crossland Const. Co., Inc.,* 962 S.W.2d 906, 911 (Mo.App. S.D.1998). "[T]he FAA's pro-arbitration policy does not operate with out regard to the intent of the contracting parties, for arbitration is a matter of consent, not of coercion. . . . [A] party cannot be forced to submit to arbitration any dispute he has not agreed to submit." *Keymer,* 169 F.3d at 504.

The contract at issue plainly states that the Seller–Triarch–has the right to refer the matter to arbitration or to commence litigation, not that it can do one and then the other, seriatim. Having elected to commence litigation, Triarch no longer had a contractual right to compel arbitration.

## III. CONCLUSION

For the reasons set out above, the trial court's judgment overruling Triarch's motion to compel arbitration is affirmed, and the case is remanded for further proceedings.

All concur.

---

**7.** Although Crabtree and Triarch disagree as to the meaning of the arbitration clause, this does not make the clause ambiguous. *See Needles v. Kansas City,* 371 S.W.2d 300, 304 (Mo. banc 1963). A contract is ambiguous only if it is reasonably susceptible of differing constructions. *Hathman,* 491 S.W.2d at 264. Where, as here, the contract is not ambiguous, the court will determine the parties' intent from the four corners of the contract. *Eisenberg v. Redd,* 38 S.W.3d 409, 411 (Mo. banc 2001). Even if there were an ambiguity in the terms of the agreement, ambiguities in contracts should be construed against the drafter. *Transit Cas. Co. in Receivership v. Certain Underwriters at Lloyd's of London,* 963 S.W.2d 392, 398 (Mo.App. W.D.1998); *Marion v. Hazelwood Farms Bakeries, Inc.,* 969 F.Supp. 540, 543 (E.D.Mo.1997). Despite the FAA's policy favoring arbitration, the FAA does not preempt this rule because the validity of an arbitration clause is governed by the usual rules and canons of contract interpretation. *See Village of Cairo v. Bodine Contracting Co.,* 685 S.W.2d 253, 258 (Mo.App. W.D. 1985).