SMITH, Circuit Judge,
dissenting.
I respectfully dissent from the majority’s holding that “the language of the contracts did not unequivocally express the parties’ intent for the contracts to last *946 forever.” In doing so, the majority discounts two clearly applicable Missouri contract-interpretation principles in favor of an arguable public policy exception. I would apply traditional Missouri contract principles and affirm the district court’s determination that H & R Block drafted and entered into enforceable, perpetual agreements with Franklin.
“The guiding principle of contract interpretation under Missouri law is that a court will seek to ascertain the intent of the parties and to give effect to that intent.” Triarch Indus., Inc. v. Crabtree, 158 S.W.3d 772, 776 (Mo.2005) (en banc). Thus, “[t]he intent of the parties to a contract is presumed to be expressed by the ordinary meaning of the contract’s terms.” Id. But, “[i]f ambiguous, [the contract] will be construed against the drafter, as is the case with other contracts under Missouri law.” Id. Here, we should interpret the contracts “to ascertain the intent of [H & R Block and Franklin] and to give effect to that intent.” Id. “[Missouri] law discourages perpetuities, and does not favor covenants for continued renewals, but, when they are clearly made, their binding obligation is recognized, and will be enforced.” Diffenderfer, 25 S.W. at 544.
On appeal, H & R Block argues that the district court erred in finding that the franchise agreements with Franklin are enforceable, perpetual contracts. Specifically, it argues that the district court ignored Missouri’s strong public policy against interpreting automatically-renewable contracts to be perpetual agreements.
The agreements state in relevant part: The initial term of this Agreement shall begin on the date hereof and, unless sooner terminated by [H & R] Block [for cause] as provided in paragraph 6, shall end five years after such date, and shall automatically renew itself for successive five-year terms thereafter (the “renewal terms”); provided, that Franchisee may terminate this Agreement effective at the end of the initial term or any renewal term upon at least 120 days[,] written notice to [H & R] Block prior to the end of the initial term or renewal term, as the case may be.
As the district court noted, the franchise agreements in this case expressly allow the franchisee, Franklin, to terminate the agreements upon 120 days’ notice at the end of any five-year period. Conversely, the agreements only allow H & R Block to terminate the agreements for cause. H & R Block could have included a reciprocal at-will-termination provision in the franchise agreements but did not. Rather, it expressly limited its own right to cancel the agreements by requiring cause. The franchise agreements’ plain language expressly contemplates continuous renewals. In Missouri, “[t]he cardinal rule in the interpretation of a contract is to ascertain the intention of the parties and to give effect to that intention.” Peterson v. Cont’l Boiler Works, Inc., 783 S.W.2d 896, 901 (Mo.1990) (en banc) (quotation and citation omitted). Because the franchise agreements expressly grant Franklin an exclusive right to terminate the agreements upon notice and only permit H & R Block to terminate for cause, in my view, I would not rewrite the contract to give H & R Block a contract right that it did not bargain to receive based on a public-policy exception. Monterosso v. St. Louis Globe-Democrat Publ’g Co., 368 S.W.2d 481, 487 (Mo.1963) (“The courts cannot make contracts for litigants or rewrite contracts by judicial interpretation.” (internal citation omitted)).
By rewriting the franchise agreements, the majority not only gives H & R Block a right that it did not have under the contracts, but it also takes away rights that Franklin had as a franchisee. In the agreements, H & R Block included a *947 clause that requires Franklin to relinquish to H & R Block customer information gained during the franchise period, and abide by a non-compete agreement upon termination. That provision states:
Franchisee recognizes that the services to be furnished to Franchisee by [H & R] Block in connection with Franchisee’s use of the licensed marks and the reputation and goodwill associated with such marks, will be principal factors in obtaining customers for Franchise, and Franchisee further recognizes [that] he will acquire confidential business information of [H & R] Block and acknowledges that all such information constitutes trade secrets of [H & R] Block, the disclosure of which would cause it substantial loss. Accordingly, in the event of termination of this Agreement for any reason whatsoever, or upon its transfer or assignment as permitted herein, all rights of Franchisee hereunder shall thereupon terminate, and Franchisee shall ... immediately return to [H & R] Block copies of all customer tax returns and all materials, data and property of [H & R] Block including all sets and copies of the Manual and all books, records, customer lists, customer names, forms and files, and shall assign whatever right, title[,] or interest Franchisee may have in and to all leases covering equipment or real property then used in connection with Franchisee’s tax return preparation operations as [H & R] Block may require.... [H & R] Block shall thereafter have the sole right and privilege to use any information appearing on file copies of customer tax returns in connection with the preparation of subsequent years’ tax returns for such customers.
By allowing H & R Block to terminate the agreements at will, the majority punishes Franklin and leaves him without contractual protection from a potentially abusive franchisor. Under the majority’s view of the agreements, H & R Block could receive the benefit of Franklin’s work and simply decide to terminate the contracts without any compensation to Franklin. These contracts contain no buy-out provision as in Armstrong.
We should not presume that H & R Block erroneously drafted the contracts. Giving Franklin an exclusive right to terminate the relationship makes sense in light of “the situation of the parties.” Paisley, 143 S.W.2d at 270. Continually renewable agreements give incentives to prospective franchisees to enter a business with the assurance of predictably continuing in that business unless they fail to meet their obligations under the agreement.
In reaching the conclusion that H & R Block and Franklin did not enter into an enforceable perpetual agreement, the majority relies on the reasoning of two Missouri Appellate Court decisions, Preferred Physicians and Armstrong. The agreements in those cases are materially distinguishable from the agreements present here. Unlike in those cases, the agreements here expressly grant the franchisee an exclusive right to terminate the agreements at will upon sufficient notice. H & R Block, the agreements’ drafter, reserved no such right. Rather, the agreements in this case only allow H & R Block to terminate the agreements for cause. In those cases the courts relied, in part, on the conclusion that one party could coerce another party into continuing the agreement into perpetuity. See Armstrong, 96 S.W.3d at 878 (“To enforce the automatic renewal provision would enable one party to coerce the other into a perpetual cycle of five-year obligations and would render the five-year provisions of the duration provision meaningless.”); Preferred Physicians, 961 S.W.2d at 103 (“Management Group, under a literal reading of the con *948 tract, could have coerced Risk Retention Group, against its will, into another five-year period of obligations. This is hardly mutual assent, and we refuse to enforce the contract’s renewal provisions without assurance of mutual assent.”). In both of those cases, the automatic renewal provision seemed more a matter of oversight than intention. In this case, on the other hand, the parties expressly contracted for that result. H & R Block purposely drafted a franchise agreement that allowed the franchisee to maintain perpetually renewable contracts with H & R Block except upon the franchisee’s breach. If this has proven unwise, H & R Block should not be rescued from its imprudence by a public policy exception to Missouri contract law.
Moreover, the majority overlooks a recent case deciding the same issue under similar facts and law. In Southern Wine & Spirits of Nevada v. Mountain Valley Spring Co., this court found that “[t]he Agreement clearly provides for a perpetual duration unless one of two specific events occurs — mutual consent to end the Agreement ... or default.” 646 F.3d 526, 532 (8th Cir.2011). We reasoned that “[i]f we were to interpret the Agreement to be terminable at will by either party, ... we effectively would nullify the contractual provisions regarding the conditions for termination — a result rejected by Nevada law.” Id. (footnote omitted).[2]
Finally, interpreting these contracts to be enforceable, perpetual agreements does not raise serious public policy concerns. These are not adhesion contracts or the obvious result of negligent drafting. Rather, H & R Block drafted the contracts and specifically afforded Franklin the right to terminate the agreements at will upon notice, while giving itself only the right to terminate for cause. Further, the contracts do not place burdensome affirmative obligations on H & R Block. Franklin simply uses H & R Block’s trademark and materials, but prepares the tax returns himself. H & R Block receives passive income from Franklin’s efforts. Finally, if Franklin does not comply with the agreements, H & R Block can terminate the agreements for cause.
Because I would affirm the district court’s well-reasoned decision, I respectfully dissent.

. Nevada law is similar to Missouri law. In reaching our conclusion in Southern Wine and Spirits, we relied on the Nevada Supreme Court's opinion in Bell v. Leven, 120 Nev. 388, 90 P.3d 1286 (2004). In Bell, the Nevada Supreme Court noted “that as a matter of public policy, courts should avoid construing contracts to impose a perpetual obligation. However, when the language of a contract clearly provides that the contract is to have a perpetual duration, the courts must enforce the contract according to its terms.” Id. at 1288. In noting this rule, the Nevada Supreme Court cited favorably Preferred Physicians. Id. at 1288 n. 4.