**Henry M. ORDOWER,**
**et al., Appellants,**

v.

**NRT MISSOURI, LLC, Defendant,**

v.

**Kono Enterprises LLC, Respondent.**

No. ED 104616

Missouri Court of Appeals,
Eastern District,
DIVISION TWO.

Filed: September 19, 2017

Henry Michael Ordower, for appellants.

Fatemeh Shabnam Nouraie and James August Beckemeier, for respondent.

## OPINION

Colleen Dolan, Judge

Henry and Ilene Ordower ("Appellants"), plaintiffs in the trial court, appeal certain aspects of the trial court's order and judgment against Kono Enterprises, LLC ("Seller"). Appellants argue the trial court erred by (1) failing to assess NRT Missouri, LLC's (the "Escrow Agent") attorney's fees against Seller per the Residential Sale Contract (the "Contract"); (2)

failing to categorize the Escrow Agent's attorney's fees as damages incurred by Appellants per the terms of the Contract; and (3) assessing Appellants' attorney's fees to be $2,500 as this amount undervalues the time and value of Mr. Ordower's labor.

### I. Factual and Procedural History

On April 11, 2015, Appellants and Seller entered into the Contract for the Appellants' purchase of real property owned by Seller. In accordance with the Contract, Appellants tendered $15,000 earnest money to the Escrow Agent. On April 21, 2015, Seller's agent sent Appellants' agent an e-mail with documents including a "Condominium Resale Certificate," which stated that Seller intended the documents to comply with the Contract and disclosure requirements under Missouri law § 448.4-109.[1] Appellants sent notice to Seller that they were terminating the Contract because there was no accompanying balance sheet with the Condominium Resale Certificate as required by § 448.4-109. Appellants also provided the necessary termination documents and requested that the Escrow Agent return the earnest money to them. Seller notified Appellants that it disputed Appellants' right to terminate the Contract.

The Contract provided that, in the event of a dispute over the earnest money, Escrow Agent was to hold the money until it obtained a written release from all parties consenting to its disposition, or until the matter was decided by the courts. Escrow Agent sought Seller's release, but Seller refused. Escrow Agent informed Appellants that under the terms of the Contract, it was unable to return the money to them.

**1.** All statutory citations are to RSMo 2000 as updated through the most recent cumulative supplement, unless otherwise indicated.

On May 27, 2015, Appellants filed a three-count petition against the Escrow Agent claiming: (1) it had retained the funds unlawfully because the Contract was void; (2) the court should award Appellants $15,000 in damages and $10,000 in punitive damages for the tort of conversion because the Escrow Agent willfully and maliciously retained the funds unlawfully after the Contract became void; and (3) the court should award attorney's fees and punitive damages of $10,000 as provided in the Uniform Condominium Act under § 448.4-117. Appellants did not bring any claims against Seller at that time.

In response, the Escrow Agent filed a counterclaim/third party petition in interpleader against Appellants and Seller. In its petition, the Escrow Agent pleaded that it had requested Seller to execute a mutual release to allow the Escrow Agent to return the earnest money to Appellants, but Seller had refused. The Escrow Agent further pleaded it had no interest in the earnest money and was ready, willing, and able to pay it, but it "has received conflicting claims . . . from [Appellants] and [Seller] . . . and is uncertain as to which party is entitled to payment." The Escrow Agent offered to pay the earnest money into the court and requested the court deduct its fees, costs, and expenses from the earnest money directly, then discharge it from any further liability. The record does not reflect a court order granting any of the requested relief and it appears the money was never deposited into the registry of the court as Escrow Agent had sought to do. Appellants, however, did not dismiss their claims against the Escrow Agent.

Seller filed a third-party crossclaim against Appellants for breach of contract, claiming Appellants wrongfully terminated the Contract and Seller was therefore entitled to the earnest money. Appellants filed a counterclaim against Seller for abuse of process and an additional claim against the Escrow Agent for indemnity on the breach of contract claim filed against them by Seller. The case proceeded to trial and the parties submitted their claims to the court for disposition.

The trial court found that the "Condominium Resale Certificate" was incomplete, Appellants had the right to terminate the Contract, and entered judgment in favor of Appellants on Seller's breach of contract claim against them. Appellants were awarded $2,500 in reasonable attorney's fees from Seller for successfully defending against Seller's claim for breach of contract and the court dismissed as moot Appellants' request for indemnification from the Escrow Agent for the breach of contract claim because Appellants prevailed on that claim. The court found against Appellants on their claims against the Escrow Agent for unlawfully withholding the earnest money, conversion, and attorney's fees/punitive damages pursuant to § 448.4-117, and their claim against Seller for abuse of process. The court ordered the $15,000 earnest money be returned to Appellants less $13,650.65 for the Escrow Agent's attorney's fees and cost of litigation incurred in its defense against Appellants' claims.

Appellants appealed the trial court's judgment and while the appeal was pending reached a settlement with the Escrow Agent. Prior to oral argument, Appellants filed a motion to dismiss with prejudice any claims on appeal against the Escrow Agent. Our Court dismissed the appeal of the judgment as to the Escrow Agent only.

In their brief, Appellants raised three points on appeal. First, they argue the clear and unambiguous language of Section 13 of the Contract provides for reasonable attorney's fees to be assessed against the losing party, Seller, and not the prevailing party, Appellants. Second, and in the alter-

native, Appellants contend the court erred in failing to assess the Escrow Agent's attorney's fees as damages incurred by Appellants which are recoverable under Section 13 by the prevailing party from the losing party. Third, Appellants assert the court erred in determining Appellants' reasonable attorney's fees were $2,500 because this amount is inadequate and undervalues Mr. Ordower's labor.

## II.  Standard of Review

We will affirm the trial court's decision if it is supported by substantial evidence, it is not against the weight of the evidence, and it does not erroneously declare or apply the law. *Miken Techs., Inc. v. Traffic Law Headquarters, P.C.*, 494 S.W.3d 609, 611 (Mo. App. E.D. 2016) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). "This Court defers to the trial court for factual findings, but reviews its legal conclusions *de novo.*" *Id.* "Interpretation of a contract is a question of law reviewed *de novo* by this Court." *City of Univ. City v. AT&T Wireless Servs.*, 371 S.W.3d 14, 17 (Mo. App. E.D. 2012).

## III.  Discussion

**a. Regarding Appellants Points I and II, the trial court did not err in assessing the Escrow Agent's attorney's fees and expenses against the earnest money, as they were not governed by the terms of the Contract.**

■ Both Points I and II hinge on the applicability of Section 13. Appellants argue in Points I and II that the trial court erred (1) in failing to assess the Escrow Agent's reasonable attorney's fees as a "cost of litigation" against Seller (Point I), or alternatively, (2) in failing to assess the fees as Appellants' "damages" (Point II),

because Appellants were the "prevailing party" and Seller was the "losing party" on Seller's breach of contract claim. Section 13 provides, "[i]n the event of litigation *between the parties*, the prevailing party shall recover, in addition to *damages* or equitable relief, *the cost of litigation including reasonable attorney's fees.*" (emphasis added).

Appellants argue in their first point that the trial court erred in failing to assess the Escrow Agent's attorney's fees and expenses against Seller because the clear and unambiguous language of Section 13 of the Contract provides for reasonable attorney's fees to be assessed against the losing party and not the prevailing party. "The guiding principle of contract interpretation under Missouri law is that a court will seek to ascertain the intent of the parties and to give effect to that intent." *Triarch Indus., Inc. v. Crabtree*, 158 S.W.3d 772, 776 (Mo. banc 2005). We presume the intent of the parties was expressed by the ordinary meaning of the terms of the contract. *Id.*

Both parties agree that Section 12 [2] provides that the earnest money is intended to be used "as a source of payment for the escrow agent's fees and expenses."

Section 12 of the Contract provides the Escrow Agent shall hold the earnest money in the event of a dispute and states:

In the event of a dispute over any earnest money held by the escrow agent, the escrow agent shall continue to hold said deposit in its escrow account until: (1) escrow agent has a written release from all parties consenting to its disposition; or (2) until a civil action is filed to determine its disposition (at which time payment may be made into court, and in such an event, court costs and escrow

---

**2.** Any reference to Section 12 or Section 13 may be used interchangeably with any reference by the dissent to paragraph 12 or paragraph 13. Appellants refer to each provision as "paragraphs," while Respondent defines them as "Sections."

agent's attorney fees will be paid from earnest money); or (3) until a final court judgment mandates its disposition; or (4) as may be required by applicable law.

Appellants further explain that Section 12 "is designed to protect the escrow agent from expenses it may incur ... before returning the excess to the prevailing party in the lawsuit," as the Escrow Agent is a "neutral party." Accordingly, this dispute centers on the interpretation of Section 13, the "remedies provision." However, Section 13 is only implicated by "the event of litigation between the parties [to the Contract]." Section 13 reads:

> If the default is by Seller, Buyer may either release Seller from liability upon Seller's release of the earnest money and reimbursement to Buyer for all direct costs and expenses, as specified in Buyer's notice of default ... or may pursue any remedy at law and in equity, including enforcement of sale. Buyer's release of Seller does not relieve Seller of liability to brokers under the listing contract. *In the event of litigation between the parties, the prevailing party shall recover, in addition to damages or equitable relief, the cost of litigation including reasonable attorney's fees.* (emphasis added).

The only "parties" to the Contract were (1) Appellants and (2) Seller. In Section 1 ("*PARTIES* AND PROPERTY"), the Contract only mentions the "Buyer(s)" (Appellants here) and "the undersigned Seller" (Respondent here). (emphasis added). The fact that the Escrow Agent was a non-party to the contract is further established under Section 3 "PURCHASE PRICE," where it refers to the Escrow Agent as "TBD." Accordingly, the Escrow

Agent was clearly *not* a party to the contract.

Section 13 only applies to the "parties" to the Contract. The only people or entities referenced in the section are "party/parties," "Buyer," and "Seller." For Appellants' argument to prevail, they must rely on the following language, "[i]n the event of litigation between the parties, the prevailing party shall recover, in addition to damages or equitable relief, the cost of litigation including reasonable attorney's fees." A necessary predicate for receiving "damages," "equitable relief," or "the cost of litigation" under Section 13 is "the event of litigation between the parties." Appellants claim they were the "prevailing party" in the underlying litigation. However, Appellants only prevailed on their defense of Seller's breach of contract claim. Appellants were the *losing party* in all three of their claims against the Escrow Agent. The cost of litigation (including reasonable attorney's fees) sought by Appellants does not stem from the event of litigation between the parties; they spawned from litigation between a party (Appellants) and a non-party (the Escrow Agent). The fact that Respondent later brought a breach of contract claim against Appellants is immaterial to the amount of costs incurred by the Escrow Agent in defending itself against Appellants' claims.[3] Accordingly, we find Section 13 inapplicable.

For those same reasons, Appellants' Point II, where they seek to categorize the Escrow Agent's attorney's fees as "damages" which they may recover pursuant to Section 13 as the prevailing party, necessarily fails as well. Therefore, Points I and II are denied.

---

**3.** The dissent points out that the Escrow Agent requested to be dismissed from the litigation at an early stage, however, there does not appear to be a basis for the trial court to have dismissed the Escrow Agent while it had three claims pending against it.

### b. The trial court did not err in determining the reasonable attorney's fees of Appellants were $2,500.

A court is deemed to be an expert in awarding attorney's fees and has discretion to award an appropriate amount. *Howard v. City of Kansas City*, 332 S.W.3d 772, 792 (Mo. banc 2011). A court may award attorney's fees for one particular claim among many, and it is obligated to segregate the claims when an award is authorized for some and not others. *Western Blue Print Co., LLC v. Roberts*, 367 S.W.3d 7, 23 (2012). In order "[t]o demonstrate an abuse of discretion, the complaining party must show the trial court's decision was against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice." *Id.* (internal quotation marks omitted).

Appellants argue that the court's award of $2,500 in attorney's fees undervalues the time Mr. Ordower spent working on this case. Appellants cite the amount awarded to the Escrow Agent for its attorney's fees and claim and allege, as a disinterested party, the Escrow Agent's attorney would have spent far less time on this suit than Mr. Ordower. This mischaracterizes the Escrow Agent's role in this litigation. The Escrow Agent was not a "disinterested party"; it was the defendant and was forced to actively defend itself against three claims filed by Appellants. The Escrow Agent sought leave to deposit the earnest money with the court and asked to be dismissed from the case. The record does not reflect that the earnest money was deposited and it is clear from the record that Appellants did not dismiss its claims against the Escrow Agent, as the Escrow Agent participated in the trial in defending against Appellants' claims against it.

In this case, the court stated it was awarding $2,500 in attorney's fees to Appellants for defending "the breach of contract claim[.]" Appellants asked our Court for leave to file the Record on Appeal without a transcript, asserting that their settlement with the Escrow Agent eliminated the issues on appeal for which a transcript was critical. We granted this motion, and thus the record before us is bare as to what evidence the trial court reviewed in making its determination of the amount of Appellants' attorney's fees to be awarded. In order to comply with Rule 81.12(a), it falls to an appellant to "file a transcript and prepare a legal file of the record, proceedings and evidence necessary to resolve the issues on appeal." *Zlotopolski v. Dir. of Revenue*, 62 S.W.3d 466, 468–69 (Mo. App. E.D. 2001). "Importantly, a transcript is necessary on appeal to verify factual statements made by the parties in their briefs and to verify which exhibits were admitted into evidence." *Id.* at 469. The court found that Appellants were entitled to reasonable attorney's fees in the amount of $2,500. A court that tried a case is deemed to be an expert in the matters and may determine the appropriate amount of attorney's fees "without the aid of evidence." *Id.* (internal quotations omitted).

Appellants failed to direct our Court to any evidence in the record on appeal which supports their contention that the trial court abused its discretion in entering its award of attorney's fees. We do not believe the award was illogical under the circumstances or "so arbitrary and unreasonable" that it shocks our sense of justice.[4] Appellants have not met their bur-

---

4. On appeal, Mr. Ordower filed an affidavit seeking to assert the number of hours spent defending the breach of contract claim. This evidence was not presented to the trial court, therefore it is not part of the reviewable record in this case. *See* Rule 81.12(b). "Docu-

den on appeal of demonstrating an abuse of discretion. Point III is denied.

## IV. Conclusion

For the foregoing reasons, we affirm the judgment of the trial court.

Roy L. Richter, J., concurs.

Sherri B. Sullivan, P.J., dissents in separate opinion.

SHERRI B. SULLIVAN, P.J., dissenting.

I respectfully dissent.

Henry and Ilene Ordower (Appellants) brought a three-point appeal. In their first point, they allege the trial court erred in failing to assess NRT Missouri, LLC's (the Escrow Agent) attorney's fees and expenses against Kono Enterprises, LLC (the Seller) because the clear and unambiguous language of Paragraph 13 of the Residential Sales Contract provides for reasonable attorney's fees to be assessed against the losing party and not the prevailing party. Appellants were the prevailing party in their petition because the court awarded them what they sought—the return of their $15,000 earnest money from escrow—and they prevailed in Seller's breach of contract claim against them. However, by then subtracting the Escrow Agent's $13,650.65 attorney's fees and expenses in defending the action from the prevailing Appellants' $15,000 earnest money, Appellants were left with a net recovery of $1,349.35.

I find this result legally and equitably flawed. Appellants were placed in a position of having to bring suit against the Escrow Agent when Seller refused to agree to allow the Escrow Agent to release Appellants' earnest money to them after the sale legitimately fell through. As the majority states, "Escrow Agent informed Appellants that under the terms of the contract, it was unable to return the money to them." The Escrow Agent, pursuant to Paragraph 12 "Earnest Money" of the Residential Sales Contract, is only allowed to disburse the money in these conditions:

> In the event of a dispute over any earnest money held by the escrow agent, the escrow agent shall continue to hold said deposit in its escrow account until: 1) escrow agent has a written release from all parties consenting to its disposition; or 2) until a civil action is filed to determine its disposition (at which time payment may be made into court, and in such event, court costs and escrow agent's attorney fees will be paid from earnest money); or 3) until a final court judgment mandates its disposition; or 4) as may be required by applicable law.

Here, Seller refused to consent to the earnest money's disposition via option one. In fact, when Escrow Agent interpleaded Seller into the action, Seller filed a cross-claim against Appellants for breach of contract, which was quickly dispatched by the trial court.

Meanwhile, Escrow Agent requested the trial court in its Counterclaim/Third Party Petition to deposit the money into a repository of the court because it had no interest in the $15,000; it held the funds merely as a neutral escrow agent; it had no interest in converting the money for any use; and the sale clearly was not going to proceed because Appellants timely elected to void the sale on April 27, 2015, for Seller's failure to provide Appellants the condominium resale certificate within five days

ments that were never presented to nor considered by the trial court cannot be included in the record on appeal." *Welch v. Auto. Club*

*Inter–Ins. Exch.*, 948 S.W.2d 718, 719 n.1 (Mo. App. E.D. 1997). We therefore grant Seller's motion to strike this affidavit.

of April 22, 2015. See Section 448.4-109(3) RSMo 2000.

The trial court allowed the Escrow Agent's third-party interpleader of Seller, but did not accept Escrow Agent's request for payment of the earnest money into court and request to be discharged from the proceedings, which was unfortunate because a simple reading of the residential sales contract would have shown such a course of action to be the intent of all involved. See Residential Sales Contract p. 5, paragraph 12, "Earnest Money," option 2. The court could then have dismissed Appellants' claims against the Escrow Agent, who no longer had possession of Appellants' earnest money and thus would be of no interest to Appellants. Such an action also would have prevented the needless accrual of over $13,000 in legal fees by an unnecessary party in a very simple contract case.

The proceedings began with Appellants' petition filed May 27, 2015, seeking the return of their earnest money because Seller would not agree to the release despite the contract's complete failure. Escrow Agent's Counterclaim/Third Party Petition was filed on July 7, 2015; and the case proceeded for almost a year until final judgment on June 2, 2016, with the Escrow Agent incurring over $13,000 in attorney's fees alone.

This is not the fault of the Escrow Agent, who asked to be released early in the litigation but was refused by the trial court. This is not the fault of Appellants, who pursuant to certain case law must sue the keeper of the coin in escrow to retrieve their earnest money when the other party is being obstinate or unreasonable as to its release despite the failure of the deal. Although Appellants did include a claim of conversion against Escrow Agent, it was in the alternative to its first claim of a basic "failure to return funds."

Seller concedes in its brief on appeal Escrow Agent refused to disburse the earnest money to Appellants due to Seller's notifying Escrow Agent that it disputed Appellants' right to terminate the contract. Furthermore, Seller's lack of cooperation caused the Escrow Agent's attorney's fees to escalate beyond necessity to resolve this relatively simple case. Paragraph 13 "Remedies" of the Residential Sales Contract provides, in pertinent part:

> If either party defaults in the performance of any obligation of this contract, the party claiming a default shall notify the other party in writing of the nature of the default and his election of remedy.... If the default is by Seller, Buyer may either release Seller from liability upon **Seller's release of the earnest money and reimbursement to Buyer for all direct costs and expenses.... In the event of litigation between the parties, the prevailing party shall recover, in addition to damages or equitable relief, the cost of litigation including reasonable attorney's fees.**

(Emphasis added.) [1]

Here, Seller defaulted on the contract and Appellants were the prevailing parties. A prevailing party is the party prevailing on the main issue in dispute, *i.e.*, return of

---

1. The majority emphasizes the fact that Appellants and Seller were the <u>only</u> parties to the contract, thus the remedies paragraph <u>only</u> applies to litigation between Appellants and Seller. However, the Escrow Agent's hands were tied by the terms of the contract as well, as the majority points out in its recitation of the facts of this case, to-wit: "Escrow Agent informed Appellants that under the terms of the contract, it was unable to return the money to them." In reality, the Escrow Agent was a mere puppet being controlled by the actions of Seller in refusing to allow Escrow Agent, under the terms of the contract, to return Appellants' money which was rightfully theirs from the outset.

the earnest money held in escrow, even though not necessarily to the extent of its original contention. Desu v. Lewis, 427 S.W.3d 843, 845 (Mo. App. E.D. 2014); First State Bank of St. Charles, Mo. v. Frankel, 86 S.W.3d 161, 176 (Mo. App. E.D. 2002); Ken Cucchi Constr., Inc. v. O'Keefe, 973 S.W.2d 520, 528 (Mo. App. E.D. 1998). As prevailing parties, Appellants were entitled to "Seller's release of the earnest money," which the trial court found, and also to "reimbursement to Buyer for all direct costs and expenses...." In addition, there was litigation between the parties, an event for which the contract specifically provided: "In the event of litigation between the parties, the prevailing party shall recover, in addition to damages or equitable relief, the cost of litigation including reasonable attorney's fees." Pursuant to the Remedies paragraph of the contract, Appellants incurred not only their own attorney's fees of $2,500, but also damages, costs and expenses in retrieving their earnest money due to Seller's recalcitrance, in the amount of $13,650.65. Pursuant to the terms of the contract and in the interests of equity, this amount should be charged against Seller.