

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | |
|---|---|
| 50 PLUS PHARMACY, et al., | ) |
| | ) |
| Respondents, | ) |
| | ) |
| v. | )   WD77879 |
| | ) |
| | )   OPINION FILED: |
| | )   March 31, 2015 |
| CHOICE PHARMACY SYSTEMS, LLC, | ) |
| et al., | ) |
| | ) |
| Appellants. | ) |

### Appeal from the Circuit Court of Jackson County, Missouri
### The Honorable Kenneth R. Garrett, III, Judge

**Before Division I:**  Cynthia L. Martin, Presiding Judge, and
Thomas H. Newton and Mark D. Pfeiffer, Judges

Choice Pharmacy Systems, LLC; Choice Pharmacy Services, LLC d/b/a Partners Pharmacy; and Kathy Kopp (collectively, "Buyers") appeal the ruling of the Circuit Court of Jackson County, Missouri ("trial court"), denying their Motion to Compel Arbitration in the underlying litigation against Buyers filed by 50 Plus Pharmacy, Inc. and Kathy Browne (collectively, "Sellers").  We affirm.

## Factual and Procedural Background

On September 21, 2011, Sellers entered into an asset purchase agreement ("APA") with Buyers whereby Buyers purchased assets of a pharmacy business that served long-term care facilities. Pursuant to the APA, Buyers paid Sellers $6,150,000 cash for the pharmacy business with an additional $500,000 to be held in escrow and paid over three years to either Sellers, Buyers, or both, depending upon the number of patients being serviced by Buyers on the first, second, and third anniversaries of the sale. The APA specifically provides:

> This Agreement shall be governed by and construed in accordance with the Laws of the State of Missouri without regard to the rules of conflict of laws of the State of Missouri or any other jurisdiction. *Each of the Parties hereto irrevocably and unconditionally consents to submit to the jurisdiction of the federal or state courts of or located within the State of Missouri for any litigation arising out of or relating to this Agreement and the transactions contemplated thereby* (and agrees not to commence any litigation relating thereto except in such courts), waives any objection to the laying of venue of any such *litigation* therein, and agrees not to plead or claim that such *litigation* has been brought in an inconvenient forum.

(Emphasis added.) The APA incorporates by reference three separate agreements: an Employment Consulting Agreement (consulting by Seller/Consultant Kathy Browne), a Restrictive Covenant Agreement (i.e., non-competition by Sellers), and an Indemnity Escrow Agreement ("Escrow Agreement"). Of these three agreements, none contemplates arbitration except for the Escrow Agreement. And unlike any other agreement between the parties, the Escrow Agreement involves a third-party professional escrow agent located in the State of New Jersey. In the Escrow Agreement, the parties contemplate a process whereby Buyers would file a Buyer's Certificate detailing the number of patients that were being serviced on certain anniversary dates (which could lead to an escrow distribution) and/or a Claim Notice in which Buyers could assert a claim against Sellers (which would impact escrow distribution). Sellers

2

were entitled to dispute any such Claim Notice by filing a Notice of Dispute. Specifically, the Escrow Agreement provided:

> Claim Notice and Notice of Dispute. In the event **the Buyer** shall have a claim against **the Selling Parties** under the Purchase Agreement, **the Buyer** shall deliver (i) a written notice setting forth, to the extent then known, the amount, nature and basis of such claim (a "**Claim Notice**") to **the Seller** and (ii) a copy of the Claim Notice to the Escrow Agent. If **the Seller** objects to the claim set forth in such Claim Notice, or if the Seller objects to the information set forth in the Buyer's Certificate, the Seller shall, within 30 days from the date of its receipt of such Claim Notice or Buyer's Certificate, as the case may be, send a written notice (a "**Notice of Dispute**") to the Buyer and the Escrow Agent setting forth, in reasonable detail, the nature of and basis for any such objection. Any amounts requested by **the Buyer** in any Claim Notice with respect to any claim shall not preclude the Buyer from requesting further amounts in subsequent Claim Notices with respect to such claim.

And in the event the parties could not resolve escrow claims set forth in the Notice of Dispute, the Escrow Agreement further provided:

> Resolution of Disputes. In the event the Parties cannot resolve any matter *set forth in a Notice of Dispute* within 90 days following the date thereof, such dispute shall be resolved (to the exclusion of a court of law) by final and binding arbitration in Kansas City, MO, in accordance with the then existing Commercial Arbitration Rules (the **"Rules"**) of the American Arbitration Association (**"AAA"**) by a single arbitrator which is mutually agreeable to the Parties . . . .

(Emphasis added.)

After the asset purchase, Sellers allege that, *inter alia*: Buyers were uncooperative with and insulted Sellers and the client long-term care facilities; Buyers refused to support Seller/Consultant Browne's marketing activities; Buyers' actions prevented Seller/Consultant Browne from effectively performing her consultant position and prevented Seller/Browne from maintaining or increasing the number of patients served by Buyers; and Buyers failed to provide monthly records required under the APA.

On June 25, 2013, Sellers filed a petition in the trial court alleging breach of contract, tortious interference with a business relationship, and defamation. Buyers answered and asserted

counterclaims. Nearly a year after filing their answer and asserting their own counterclaims against Sellers, Buyers filed a Motion to Compel Arbitration pursuant to the Escrow Agreement; this, even though the record before the trial court contained no evidence that any Claim Notice, Buyer's Certificate, or Notice of Dispute had ever been filed by any of the parties.

The trial court denied the Motion to Compel Arbitration by Order dated August 15, 2014. Buyers timely appeal, raising two points.

## Standard of Review

"[A]n order denying an application to compel arbitration is an appealable order." *McCarney v. Nearing, Staats, Prelogar and Jones*, 866 S.W.2d 881, 886 (Mo. App. W.D. 1993) (citing § 435.440.1(1)). We review *de novo* the question of whether a trial court should have granted a motion to compel arbitration. *Triarch Indus., Inc. v. Crabtree*, 158 S.W.3d 772, 774 (Mo. banc 2005).

## Analysis

## I.

In Point I, Buyers argue that the trial court erred in denying Buyers' Motion to Compel Arbitration because the arbitration provision at issue delegated the determination of arbitrability itself to the arbitrator.

Arbitration is fundamentally a matter of contract. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010). As such, "the issue of arbitrability is a question for the courts and is to be determined by the contract entered into by the parties. . . . [A] party cannot be required to submit to arbitration any dispute which he has not agreed to so submit." *Drake Bakeries, Inc. v. Local 50, Am. Bakery & Confectionary Workers Int'l, AFL-CIO*, 370 U.S. 254, 256, 82 S.Ct. 1346, 8 L.Ed.2d 474 (1962) (internal quotation omitted).

4

However, parties may agree to arbitrate even "gateway" questions of arbitrability, i.e., "whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy" that would normally be for the court. *Rent-A-Center*, 561 U.S. at 68-69. Such provisions are often called delegation provisions. *Id.* at 68.

The United States Supreme Court, in *Rent-A-Center*, found such a delegation provision to be valid and enforceable. In *Rent-A-Center*, the arbitration agreement was not simply a clause in a general contract between the parties, but was a stand-alone contract. *Id.* at 65. The arbitration agreement in *Rent-A-Center* was extremely broad, covering all "past, present or future" disputes between the parties. *Id.* It also expressly provided that "[t]he Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable." *Id.* at 66.

In finding that the delegation provision in *Rent-A-Center* was valid as a matter of contract, the Supreme Court noted, "There is one caveat." *Id.* at 69 n.1. Quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995), *Rent-A-Center* cautions that courts "should not assume that the parties agreed to arbitrate arbitrability unless there is clea[r] and unmistakabl[e] evidence that they did so." *Id.* (internal quotation omitted). In fact, the *First Options* Court specifically noted that there is a significant difference between the question of *who* should decide arbitrability versus *whether* arbitration should be compelled—that difference being that the latter question (i.e. "whether") operates under a standard in which "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," whereas the former question (i.e. "who") operates under a

5

principle wherein "the law reverses the presumption." *First Options*, 514 U.S. at 944-45 (internal citations omitted).

*Rent-A-Center* explains that the "clear and unmistakable" requirement "pertains to the parties' manifestation of intent" and reiterates that in "circumstance[s] where contracting parties would likely have expected a court to have decided the gateway matter . . . we assume that is what they agreed to. Thus, unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *Rent-A-Center*, 561 U.S. at 69 (internal quotation and emphasis omitted).

Here, there simply is no clear and unmistakable delegation provision. To the contrary, the APA clearly and unmistakably states the opposite:

> Each of the Parties hereto irrevocably and unconditionally consents to submit to the jurisdiction of the federal and state *courts* of or located within the State of Missouri for any *litigation* arising out of or relating to this Agreement and the transactions contemplated thereby (and agrees not to commence any litigation related thereto except in such *courts*), waives any objection to the laying of venue of any such *litigation* therein, and agrees not to plead or claim that such *litigation* has been brought in an inconvenient forum.

(Emphasis added.) At best, Buyers can point to the Escrow Agreement that was incorporated by reference into the principal contract (the APA) between the parties, which includes an arbitration provision for very specific instances relating to the narrow topic of escrow claim disputes— disputes which are *not* at issue in the instant litigation.[1] Yet even in the Escrow Agreement's arbitration provision, there is no express delegation provision, only a general reference to "the then Existing Commercial Arbitration Rules of the American Arbitration Association." We

---

[1] At best, then, this creates an ambiguity between enforcement of the litigation provision versus the arbitration provision. The United States Supreme Court directs us that "the law treats silence or ambiguity about the question '*who* (primarily) should decide arbitrability' differently from the way it treats silence or ambiguity about the question '*whether* a particular merits-related dispute is arbitrable.'" *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). Plainly, the teaching of *First Options* is that an ambiguity as to "*who* should decide arbitrability" does not qualify as "clear and unmistakable" evidence that the parties have agreed to "arbitrate arbitrability." *Id.*

6

conclude that these factual circumstances are not the sort addressed or contemplated by the *Rent-A-Center* court as dictating delegation of the gateway matter of the question of arbitrability to the arbitrator.[2]

Point I is denied.

## II.

In Point II, Buyers argue that, even if the trial court had the authority to determine the gateway issue of arbitrability, the trial court erred in denying the Motion to Compel Arbitration and concluding that, "the arbitration provision does not relate to the cause of actions filed by [Sellers]." Buyers argue that an arbitration provision found exclusively in one of three subordinate agreements incorporated by the terms of the APA must apply to *all claims* between the parties. We disagree.

As identified previously, the arbitration provision found in the Escrow Agreement is narrowly defined to address arbitration of disputed escrow claims asserted to a third-party

---

[2] Buyers cite to *Green v. SuperShuttle International, Inc.*, 653 F.3d 766 (8th Cir. 2011), and *Fallo v. High-Tech Institute*, 559 F.3d 874 (8th Cir. 2009), which held that an arbitration agreement's adoption of the AAA Rules sufficiently indicated the parties' agreement to delegate gateway issues to the arbitrator. However, even where circuit decisions are presented to Missouri state courts regarding interpretation of federal law, our Missouri Supreme Court has stated, "[t]his Court is not bound to follow Circuit decisions but may consider them in undertaking its independent assessment of a case." *State v. Storey*, 901 S.W.2d 886, 900 (Mo. banc 1995) (internal citation omitted). More importantly, both of these circuit cases are factually distinguishable: the arbitration provisions in both *Green* and *Fallo* were much broader arbitration clauses encompassing the entire agreement between the parties (not just escrow provisions incorporated into a larger principal agreement between the parties) and did not contain a conflicting litigation provision. Conversely, numerous other federal circuits, including some with more closely analogous fact patterns, have reached the opposite conclusion. *See Quilloin v. Tenet HealthSystem Philadelphia*, 673 F.3d 221 (3rd Cir. 2012) (where Federal Arbitration Act and procedural rules of the AAA were incorporated into the arbitration provision, but no express delegation provision was separately included in the agreement, the gateway issue of arbitrability was a question for judicial determination); *Palmer v. Infosys Techs. Ltd. Inc.*, 832 F.Supp.2d 1341 (M.D. Ala. 2011) (where arbitration provision incorporated both California state law—contemplating courts to determine gateway issues—and rules of the AAA—contemplating delegation of gateway issues to arbitrator—there was not a "clear and unmistakable" intent to arbitrate such issues); *Peabody Holding Co., LLC v. United Mine Workers of Am.*, 665 F.3d 96 (4th Cir. 2012) (despite broad arbitration provision and presumption favoring arbitration, such presumption was not applied to resolve gateway issue of arbitrability, and absent an express delegation provision clearly and unmistakably noting the parties' intent to delegate gateway issues to the arbitrator, the "exacting" standard was not met); *Grosvenor v. Qwest Commc'ns Int'l, Inc.*, Civ. A. No. 09-cv-2848-WDM-KMT, 2010 WL 3906253 (D. Colo. Sept. 30, 2010) (an arbitration agreement generally incorporating AAA rules was not specific enough to establish clear and unmistakable intent to arbitrate gateway issues).

escrow agent located in the State of New Jersey. The operative arbitration provision, unlike so many of the agreements in the cases cited by Buyers, does not apply to, for example, "[a]ny controversy or [c]laim arising out of or related to the [c]ontract, or the breach thereof," *Metro Demolition & Excavating Co. v. H.B.D. Contracting, Inc.*, 37 S.W.3d 843, 845 (Mo. App. E.D. 2001), or to "[a]ny controversy or claims arising out of or relating to this [a]greement," *Greenwood v. Sherfield*, 895 S.W.2d 169, 171 (Mo. App. S.D. 1995), or certainly not to "all 'past, present or future' disputes arising out of" the relationship among the parties, *Rent-A-Center*, 561 U.S. at 68. Frankly, here, it is the *litigation* choice of forum provision in the APA that uses broad language designed to compel *litigation* for any controversy "arising out of or related to this agreement."

Conversely, in the Escrow Agreement, the parties narrowly agreed to arbitrate "any matter set forth in a Notice of Dispute" that could not be resolved. Under the Indemnity Escrow Agreement, a "Notice of Dispute" arises as follows:

> Claim Notice and Notice of Dispute. In the event **the Buyer** shall have a claim against **the Selling Parties** under the Purchase Agreement, **the Buyer** shall deliver (i) a written notice setting forth, to the extent then known, the amount, nature and basis of such a claim (a "**Claim Notice**") to **the Seller** and (ii) a copy of the Claim Notice to the Escrow Agent. If **the Seller** objects to the claim set forth in such Claim Notice, or if the Seller objects to the information set forth in the Buyer's Certificate, the Seller shall, within 30 days from the date of its receipt of such Claim Notice or Buyer's Certificate, as the case may be, send a written notice (a "**Notice of Dispute**") to the Buyer and the Escrow Agent setting forth, in reasonable detail, the nature of and basis for any such objection. Any amounts requested by **the Buyer** in any Claim Notice with respect to any claim shall not preclude the Buyer from requesting further amounts in subsequent Claim Notices with respect to such claim.

Accordingly, the parties only agreed to arbitrate claims arising out of Buyers' filing of a Claim Notice or out of Sellers' objection to such a Claim Notice or to the annual Buyer's Certificate

8

prepared by Buyers. Here, it is undisputed that no Buyer's Certificate, Claim Notice, or Notice of Dispute was before the trial court or this Court.

Instead, Sellers have alleged (and Buyers have alleged in their counterclaim) that the opposing parties have breached their respective obligations under the terms of the APA. Additionally, Sellers have also alleged that Buyers committed tortious conduct unrelated to any attempt of any party to collect escrowed funds, including for example, a claim of defamation. Thus, on the record before us, the narrow arbitration provision relating exclusively to the Escrow Agreement does not compel the parties to arbitrate their claims in the present litigation.

Point II is denied.

## Conclusion

The trial court's ruling denying Buyers' Motion to Compel Arbitration is affirmed.

_____
Mark D. Pfeiffer, Judge

Cynthia L. Martin, Presiding Judge, and
Thomas H. Newton, Judge, concur.

9