

# In the Missouri Court of Appeals
## Eastern District
### DIVISION FOUR

ARIZON STRUCTURES WORLWIDE, LLC, )     No. ED102757
)
    Respondent, )
)
vs. )
)
GLOBAL BLUE TECHNOLOGIES-CAMERON, )
LLC, GLOBAL BLUE TECHNOLOGIES, INC., )     Appeal from the Circuit Court of
GLOBAL BLUE TECHNOLOGIES- )     St. Louis County
INTERNATIONAL, LLC, and GLOBAL BLUE )
TECHNOLOGIES-USA, LLC, )
)
    Appellants, )
)
and )
)
DAVID K. WILLS and JAMES E. SALMON, )
)     Honorable Michael D. Burton
    Defendants, )
)
and )
)
JOHNSON MARCRAFT, INC., JAN LIGAS and )
RON SCHARF, )
)
    Respondents. )     Filed: October 6, 2015

#### *Introduction*

Global Blue Technologies-Cameron, LLC, Global Blue Technologies, Inc., Global Blue

Technologies-International, LLC, and Global Blue Technologies-USA, LLC, (collectively,

"Buyers") appeal the order of the Circuit Court of St. Louis County denying their motion to

compel arbitration in an action for breach of contract filed by Arizon Structures Worldwide,

LLC, Johnson Marcraft, Inc., Ron Scharf, and Jan Ligas[1] (collectively, "Sellers"). Buyers claim the trial court erred because: (1) the parties executed a valid and enforceable arbitration agreement; and (2) Sellers' claims against the individual, non-signatory defendants, as well as the corporate defendants, are subject to the arbitration agreement. We affirm.

## Factual and Procedural Background

Buyers, affiliated aquaculture companies, farm shrimp in manmade ponds. Sellers design and manufacture fabric-covered, air-supported structures, or domes, commonly referred to as "air structures." On April 4, 2014, Buyers and Sellers signed a letter of intent for the purchase and sale of six customized air structures.

On April 16, 2013, Buyers and Sellers executed a "non-disclosure agreement, financing and supply agreement" (NDAFS) pursuant to which the parties agreed to provide each other certain confidential information "with a view to entering into a relationship or transaction with in [sic] regards to the products or process of the other party." The NDAFS defined "confidential information" to include Buyers' "financial statements, tax returns and other information required for the financing of [Buyers'] products and processes" and Sellers' "designs and ideas" relating to the "manufacture of air, frame and tension structures." The NDAFS required the parties to "receive and maintain such Confidential Information in the strictest confidence" and provided that "[i]f either Party shall violate any terms of this [NDAFS], the breaching party shall be liable to the non-breaching Party for all actual profits, costs, expenses, and attorney's fees incurred by the non-breaching Party to enforce this Agreement or recover any damages for breach thereof."

In regard to dispute resolution, the NDAFS contained the following arbitration provision (NDAFS Paragraph 5):

---

[1] Jan Ligas was president of Arizon, and Ron Scharf was chairman of Arizon and Johnson Marcraft, Inc.

2

5. This agreement shall be governed by the laws of the State of New York and any dispute relating to this Agreement or any other matter shall be fully and finally resolved by binding Arbitration under the rules of the American Arbitration Association ("AAA") at a location that is mutually agreed by the Parties hereto, or if no such agreement is reached, then at a location specified by an Arbitrator selected by the AAA, and any decision by said Arbitrator shall be final and binding upon the Parties, from which there shall be no appeal.

The NDAFS also contained a provision addressing forum selection (NDAFS Paragraph 6), which provided:

6. Should either Party bring any action arising from this Agreement, such action must be initiated and maintained in a federal or state court located in or covering Saint Louis County, Missouri ("Competent Court"). Further, a determination or judgment by any Competent Court may be enrolled and enforced in any jurisdiction where the Interested Party may be found or where any breach of this Agreement may occur.

On April 27, 2013, Sellers sent Buyers two, eight-page "budget quotations" (Quotations) for the sale of air structures for a price of $1,361,154 each.[2] The Quotations detailed the scope of work, schedule of payments, and terms and conditions of the sale. The Quotations' cover pages stated: "Buyer expressly acknowledges the Non-Disclosure Agreement, Financing and Supply Agreement ('NDAFS') dated April 16th, 2013 and Exhibit 1 attached thereto . . . . The Goods being purchased by the Buyer from the Seller are part of the Exclusive products and processes provided for in said NDAFS."

The first paragraph of the "Terms and Conditions of Sale" provided, in pertinent part:

1. Goods, Equipment, and Services ("goods") sold by Arizon Structures WorldWide, LLC ("Seller" or "Manufacturer") are made solely on the terms and conditions hereof notwithstanding any additional or conflicting terms or conditions that may be contained in any purchase order, specifications, contract or contract documents, or other form of purchase, all of which additional or conflicting terms and conditions are hereby objected to and rejected by Seller. . . .

---

[2] Quotation No. QUO-2946 was dated March 26, 2013. Quotation No. QUO-2989 was dated April 27, 2013. The Quotations are substantively identical, and GBT signed the "Buyer's Acceptance" of each Quotation on April 29, 2013.

3

In addition, the Quotations contained the following forum selection provision (Quotations Paragraph 14):

> 14. Any controversy or claim arising out of or relating to payment, or to Seller's Submittal, Buyer and Seller's Contract, including these Terms and Conditions of Sale, or any other matter, **shall be settled exclusively in St. Louis County Missouri Circuit Court, or at Seller's option, by arbitration** administered by the American Arbitration Association (AAA) under its Construction Industry Arbitration Rules in St. Louis County, Missouri, and Buyer hereby waives any appeal from the arbitration award and consents to the confirmation and entry of judgment thereon with or without notice in any court having jurisdiction over either Buyer or Seller. Buyer and Seller agree to use the Fast Track Procedures provided for by AAA Rules and Procedures.

(emphasis added). On April 29, 2013, David Wills and James Salmon signed page three of the Quotations, titled "Buyer's Acceptance," on behalf of Buyers. Pursuant to the parties' agreement, Sellers manufactured and supplied to Buyers two air structures.

In December 2014, Sellers filed a petition against Buyers, Mr. Wills, and Mr. Salmon in the Circuit Court of St. Louis County alleging that the defendants breached the sales contract by failing to make installment payments on two air structures.[3] Sellers sought damages in the amount of $3.5 million.

Approximately one week later, Buyers filed with the AAA a statement of claim and demand for arbitration against Sellers seeking damages for fraud and breaches of contract and warranties. Buyers alleged that the air structures supplied by Sellers were defective and "unsuitable for their intended use." Mr. Wills and Mr. Salmon were not parties to the demand for arbitration.

---

[3] Sellers filed an amended petition in January 2015 adding a request for a declaration that "any claims between the parties must be litigated in this Court and are not properly subject to arbitration with the AAA . . . ."

4

In January 2015, Sellers filed a motion to stay arbitration on the grounds that no valid and enforceable arbitration agreement existed between the parties. More specifically, Sellers asserted that the forum selection provision in Quotations Paragraph 14 superseded the inconsistent language in the previously signed NDAFS and Quotations Paragraph 14 merely "provide[d] [Sellers] with an option to initiate arbitration, but [Sellers] ha[ve] not exercised that option." (emphasis in original). Sellers further argued that, even if the forum selection language in Quotations Paragraph 14 did not supersede the NDAFS's arbitration provision, conflicts between the NDAFS Paragraph 5, NDAFS Paragraph 6, and Quotations Paragraph 14 rendered the NDAFS's arbitration provision ambiguous and therefore unenforceable.

In response, Buyers filed a motion to compel arbitration and suggestions in opposition to Sellers' motion to stay arbitration and in support of compelling arbitration. Buyers asserted that Sellers "entered into a broad, mandatory arbitration agreement with [Buyers] which was not rescinded by any other agreements of the parties and does not even conflict with any other agreement of the parties." According to Buyers, the NDAFS and the Quotations "can and must be read together" because the Quotations expressly incorporated the NDAFS. Buyers further argued that neither NDAFS Paragraph 6 nor Quotations Paragraph 14 negated the arbitration provision in NDAFS Paragraph 5 because those forum selection provisions: (1) were consistent with an intent to address post-arbitration litigation; and (2) did not specifically preclude arbitration.

After hearing arguments, the trial court entered an order granting Sellers' motion to stay arbitration. Buyers filed a notice of appeal, and this court entered an order to show cause noting that the trial court's order was not denominated a judgment and suggesting that Buyers "ask the trial judge to explicitly rule on the motion to compel arbitration in the judgment." The trial court

5

subsequently entered a judgment affirming its order granting Sellers' motion to stay arbitration and denying Buyers' motion to compel arbitration. Buyers appeal.[4]

### Standard of Review

"Whether the trial court should have granted a motion to compel arbitration is a question of law that this [c]ourt reviews de novo." Eaton v. CMH Homes, Inc., 461 S.W.3d 426, 431 (Mo. banc 2015). "However, issues relating to the existence of an arbitration agreement are factual and require our deference to the trial court's findings." Katz v. Anheuser-Busch, Inc., 347 S.W.3d 533, 539 (Mo.App.E.D. 2011). Where, as here, the trial court denied a motion to compel without comment, "it is the burden of this court to determine if substantial evidence and the weight of the evidence support the court's conclusions." Greene v. Alliance Auto, Inc., 435 S.W.3d 646, 650 (Mo.App.W.D. 2014). "All fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached." Rule 73.01(c).

### Discussion

In their first point, Buyers claim the trial court erred in denying their motion to compel arbitration and granting Sellers' motion to stay arbitration because the NDAFS and Quotations, "read together, contain an enforceable arbitration clause that . . . is fully consistent with the remainder of the parties' contract, including the forum selection clauses . . . ." Buyers further assert that the trial court erred in refusing to enforce the NDAFS's arbitration agreement because "the question of arbitrability of a particular dispute is for the arbitrator to decide." Sellers

---

[4] Pursuant to Section 435.440.1(1), a party may appeal an order denying a motion to compel arbitration. Dunn Indus. Group, Inc. v. City of Sugar Creek, 112 S.W.3d 421, 427 (Mo. banc 2003).

6

counter that the trial court properly refused to stay proceedings and compel arbitration because Quotations Paragraph 14 conflicted with and therefore superseded NDAFS Paragraph 5.

"Arbitration is a matter of contract, and a party cannot be required to arbitrate a dispute that it has not agreed to arbitrate." Dunn Indus. Group, Inc. v. City of Sugar Creek, 112 S.W.3d 421, 435 (Mo. banc 2003). When deciding whether to compel arbitration, a trial court must first determine whether the parties agreed to arbitrate the dispute at issue. Hopwood v. CitiFinancial, Inc., 429 S.W.3d 425, 427 (Mo.App.S.D. 2014). The usual rules of state contract law and canons of contract interpretation govern such determinations. Kohner Props., Inc. v. SPCP Group VI, LLC, 408 S.W.3d 336, 342 (Mo.App.E.D. 2013). The party seeking to compel arbitration has the burden of proving the existence of a valid and enforceable arbitration agreement. Whitworth v. McBride & Son Homes, Inc., 344 S.W.3d 730, 737 (Mo.App.W.D. 2011).

"The guiding principle of contract interpretation under Missouri law is that a court will seek to ascertain the intent of the parties and to give effect to that intent." Triarch Indus., Inc. v. Crabtree, 158 S.W.3d 772, 776 (Mo. banc 2005). "The intent of the parties to a contract is presumed to be expressed by the ordinary meaning of the contract's terms." Id. Additionally, "a writing is interpreted as a whole and all writings forming part of the same transaction are interpreted together." Osage Water Co. v. Golden Glade Land Owners Ass'n, Inc., 270 S.W.3d 459, 463 (Mo.App.S.D. 2008) (quoting Cure v. City of Jefferson, 380 S.W.2d 305, 310 (Mo. 1964)). However, "when two writings are inconsistent, the contract last executed, if valid, will supersede the first to the extent that the two are inconsistent." Berry v. Crouse, 376 S.W.2d 107, 112 (Mo. 1964).

The principal question before this court is whether the arbitration provision in NDAFS Paragraph 5 is valid and enforceable in light of the subsequently executed Quotations Paragraph

7

14, which requires that all disputes "be settled exclusively" in a judicial forum.[5] Buyers contend that the NDAFS and Quotations "are part of the same contract" and "must be read together as forming one agreement." They also assert that, to the extent NDAFS Paragraph 5 and Quotations Paragraph 14 conflict, they create an ambiguity, which we must construe against Sellers as drafters of the contract. In support of their argument, Buyers rely upon the factually distinguishable case of Johnson v. J.F. Enters., LLC, 400 S.W.3d 763 (Mo. banc 2013). There, the defendant dealership presented to plaintiff, who was purchasing a car, "a pile of documents," including an installment contract and a one-page arbitration agreement.[6] Id. at 765. The installment contract did not reference arbitration and contained a merger clause, stating: "this writing . . . is the complete and exclusive statement of the agreement between us . . . ." Id. The plaintiff signed the installment contract and arbitration agreement "within minutes of each other, in a single sitting, as part of a single sales transaction." Id. at 767.

On review of the trial court's order refusing to compel arbitration, the Johnson Court rejected the plaintiff's argument that, by operation of the merger clause, the installment contract contained "the complete and exclusive statement of the agreement." Id. at 766. The Court reasoned that such an interpretation would negate all other documents signed at the time of sale,

---

[5] Buyers assert for the first time on appeal that Quotations Paragraph 14 has no effect on the parties' rights under NDAFS Paragraph 5 because Quotations Paragraph 14 is "void and unenforceable for lack of consideration." Generally, we will not review issues raised for the first time on appeal because "an appellate court will not convict a trial court of error on an issue which was not before it." River City Devt. Assocs., LLC v. Accurate Disbursing Co., LLC, 345 S.W.3d 867, 873 (Mo.App.E.D. 2011).

[6] The arbitration agreement stated, in relevant part:

> *Any claim or dispute, whether in contract, tort, statute, or otherwise* (including the scope of this Arbitration Agreement, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors, or assigns, *which arise out of or relate to your credit application, purchase or condition of this vehicle, your purchase or financing contract or any resulting transaction or relationship* . . . .

Id. at 768 (emphasis in original).

including the sales contract, in contravention of the parties' intent. Id. at 766-67. The Court therefore concluded that, because "the intent of the parties is demonstrated by all the documents the parties signed contemporaneously[,] . . . . all the provisions in the writings can and should be harmonized and given effect, including a valid arbitration agreement."[7] Id. at 769.

The instant case is factually distinguishable from Johnson because the parties did not sign the NDAFS and Quotations contemporaneously. To the contrary, Buyers signed the Quotations thirteen days after they signed the NDAFS. Furthermore, the NDAFS and Quotations cover distinct aspects of the parties' transaction – the NDAFS, executed in anticipation of entering a sales contract, protects the parties' confidential information, while the Quotations outlined the terms of the sale. Finally, while the installment contract in Johnson was silent on the matter of dispute resolution, the NDAFS and Quotations contained contradictory and mutually exclusive provisions. A court cannot simultaneously give effect to an arbitration agreement stating that "any dispute . . . shall be . . . resolved by binding Arbitration" (NDAFS Paragraph 5) and a contractual provision requiring "[a]ny controversy or claim . . . be settled exclusively in St. Louis County Missouri Circuit Court. . . ." (Quotations Paragraph 14).

Additionally, Buyers contend that, under the Supreme Court's decision in Dunn, absent a clear and unequivocal manifestation of the parties' intent to rescind an agreement, a subsequent contract's forum selection clause will not supersede an earlier arbitration agreement. 112 S.W.3d at 429. In Dunn, the subcontractor and general contractor executed a construction contract with a broad, mandatory arbitration clause.[8] Id. at 427. Two years later, the parties

---

[7] The Johnson Court distinguished Berry v. Crouse, which held that "when parties signed a sales agreement and then several hours later signed a contradictory lease agreement, the latter prevailed and determined rights and liability of parties." Johnson, 400 S.W.3d at 767 n.3 (citing Berry, 376 S.W.2d at 112-13).

[8] The construction contract contained the following arbitration provision:

9

entered a change order, which incorporated "all terms and conditions of the [construction contract] to the extent those terms did not conflict with terms of the change order." Id. at 429. In regard to dispute resolution, the change order stated that "either party, at any time, *may* resort to their respective contract remedies or remedies as provided by law." Id. (emphasis added). The subcontractor later filed mechanic's lien claims against the general contractor who, in turn, filed a motion to compel arbitration. Id. at 427. The trial court denied the motion to compel arbitration, and the Supreme Court reversed on the grounds that the parties' change order "did not modify, rescind, or otherwise change the arbitration provision of the construction contract[.]" Id.

Dunn is inapposite. Unlike Quotations Paragraph 14, the change order in Dunn "can be interpreted consistently with the broad mandatory arbitration provision of the original construction contract." Id. at 429. In Dunn, the change order's "contract remedies or remedies as provided by law" provision did "not expressly exclude the marked change orders from arbitration." Id. at 430. "Instead, it preserve[d] the parties' agreement to arbitrate and other unspecified rights or remedies that [were] not inconsistent with that obligation." Id. In contrast, Quotations Paragraph 14 cannot be "interpreted consistently" with NDAFS Paragraph 5 because the later-executed contract expressly contemplates state court resolution of disputes.[9]

---

> Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

Dunn, 112 S.W.3d at 428.

[9] Other cases that Buyers rely upon for the proposition that this court can and must harmonize NDAFS Paragraph 5 and Quotations Paragraph 14 are also factually distinguishable. See, e.g., See also Unison v. Juhl Energy Devt., Inc., 789 F.3d 816, 820 (8th Cir. 2015) (interpreting supply agreement's arbitration provision did not nullify the financing agreement's forum selection clause because "these two clauses . . . are not in conflict"); Bank Julius Baer & Co.,

10

Although not precedential, <u>Applied Energetics, Inc. v. NewOak Capital Markets, LLC</u>, provides useful guidance in determining whether the forum selection clause in the Quotations revoked the previously executed arbitration agreement. 645 F.3d 522 (2d Cir. 2011). In that case, Applied Energetics, a manufacturer of military technology, entered into a "preliminary" engagement agreement with NewOak, an independent broker dealer. <u>Id.</u> at 523. The engagement agreement contained an arbitration provision, stating that: "any dispute arising out of or relating to this letter, the Indemnity Agreement and/or the transactions contemplated hereby or thereby . . . shall be resolved through binding arbitration . . . ." <u>Id.</u> The parties later signed a more formal placement agreement, which omitted any reference to arbitration and instead provided: "[a]ny dispute arising out of this Agreement shall be adjudicated in the Supreme Court, New York County or in the federal district court for the Southern District of New York." <u>Id.</u> After NewOak initiated arbitration against Applied Energetics, Applied Energetics filed a petition to stay arbitration. <u>Id.</u> at 524. The trial court found that the letter agreement's arbitration clause and the placement agreement's forum selection clause "may be read as complementary" to one another and ordered the parties to arbitrate. <u>Id.</u>

The United States Court of Appeals for the Second Circuit reversed the trial court's order compelling arbitration because "the Placement Agreement's language that 'any dispute' between the parties 'shall be adjudicated' by specified courts stands in direct conflict with the Engagement Agreement's parallel language that 'any dispute . . . shall be resolved through

Ltd. v. Waxfield Ltd., 424 F.3d 278, 284-85 (2d Cir. 2005) (permissive forum selection clause in subsequent contract could be read as complementary, rather than contradictory, to the parties' original agreement to arbitrate); Glenn Martin Engineering, Inc. v. Huawei Tech. Jamaica Co., Ltd., 2010 WL 318504 (W.D. Mo. January 20, 2010) (forum selection clause in subsequent contract did not negate earlier arbitration agreement because the "language of the forum selection clause [was] consistent with an intent to address post-arbitration litigation" and "did not specifically exclude arbitration.").

11

binding arbitration.'" Id. at 525. The court explained: "Both provisions are all-inclusive, both are mandatory, and neither admits the possibility of the other." Id. Furthermore, it was "well established that a subsequent contract regarding the same matter will supersede the prior contract." Id. at 526 (quotation omitted). The Applied Energetics court therefore concluded that the placement agreement's provision requiring adjudication superseded the engagement agreement's arbitration provision. Id. See also Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth., 764 F.3d 210, 214 (2d Cir. 2014) ("[A]n agreement to arbitrate is superseded by a later-executed agreement containing a forum selection clause if the clause 'specifically precludes' arbitration, but there is no requirement that the forum selection clause mention arbitration[.]").

Like the parties in Applied Energetics, Buyers and Sellers entered a preliminary agreement that contained a mandatory arbitration provision. The NDAFS, which the parties executed in anticipation of the later sales agreement, provided that "any dispute relating to this Agreement or any other matter shall be fully and finally resolved by binding Arbitration . . . ." Buyers and Sellers subsequently executed a comprehensive sales agreement with a contradictory forum selection provision. Quotations Paragraph 14 stated: "Any controversy or claim arising out of or relating to payment, or to Seller's Submittal, Buyer and Seller's Contract, including these Terms and Conditions of Sale, or any other matter, shall be settled exclusively in St. Louis County Missouri Circuit Court . . . ." Like the forum selection clause in Applied Energetics, the language of Quotations Paragraph 14 supersedes the earlier arbitration agreement because it is mandatory ("shall be settled exclusively") and all-inclusive ("any controversy or claim arising out of or relating to payment . . . or any other matter.").

12

In fact, Quotations Paragraph 14 communicates more clearly than the placement agreement in Applied Energetics the parties' intent that Buyers settle any disputes exclusively in Missouri courts. Where the forum selection provision in Applied Energetics did not mention arbitration, Quotation Paragraph 14 provides that "[a]ny controversy or claim . . . be settled exclusively in St. Louis County Missouri Circuit Court, *or at Seller's option, by arbitration . . . .*" (emphasis added). The explicit reference to "St. Louis County Missouri Circuit Court" makes clear that the parties intended a judicial forum and precludes resolution by any other means *except* that Sellers, but not Buyers, may elect arbitration.[10] "[Where] the new agreement contains terms that are clearly inconsistent with the previously existing contract or claim, the fact of inconsistency is itself a sufficient indication of intention to abrogate the old and substitute the new." Berry v. Crouse, 376 S.W.2d 107, 115 (Mo. 1964) (quoting 6 Corbin on Contracts, Section 1296, page 212).

Having concluded that Quotations Paragraph 14 governs dispute resolution in this case, we do not reach Buyers' second point in which they claim that "the issue of whether this dispute is subject to the arbitration clause in the NDAFS is a matter for the arbitrator to decide." We note, however, that "[w]hether a dispute is covered by an arbitration clause is relegated to the courts as a matter of law . . . ." Greenwood v. Sherfield, 895 S.W.2d 169, 174 (Mo.App.S.D. 1995). See also 50 Plus Pharmacy v. Choice Pharmacy Sys., LLC, 463 S.W.3d 457, 460

---

[10] Moreover, like the placement agreement in Applied Energetics, the Quotations contained a provision stating that Sellers sold its goods "solely on the terms and conditions hereof notwithstanding any additional or conflicting terms or conditions that may be contained in any . . . contract or contract documents . . . all of which additional terms and conditions are hereby objected to and rejected by Seller. . . ." In Applied Energetics, the court held that the placement agreement's adjudication clause "specifically preclude[d]" arbitration, "and, by operation of the merger clause, displace[d]" the engagement agreement's arbitration clause. 645 F.3d at 525-26. Similarly, language in the Quotations manifested the parties' intent to "displace" NDAFS Paragraph 5.

(Mo.App.W.D. 2015) ("[T]he issue of arbitrability is a question for the courts and is to be determined by the contract entered into by the parties.").

Because the subsequently executed contract's dispute resolution provision conflicted with and therefore superseded the earlier arbitration agreement, we conclude that the trial court did not err in denying Buyers' motion to compel arbitration and granting Sellers' motion to stay arbitration. Point denied.[11]

### Conclusion

The judgment of the trial court is affirmed.

Patricia L. Cohen, Judge

Sherri B. Sullivan, P.J., and
Kurt S. Odenwald, J., concur.

---

[11] Because our analysis of Buyers' first point is dispositive of this appeal, we do not reach their second point on appeal.

14