Katherine DOLLY, et. al., Respondents,

v.

**CONCORDE CAREER COLLEGES, INC., Appellant,**

WD 80343

Missouri Court of Appeals,
Western District.

Opinion filed: October 3, 2017

Motion for Rehearing and/or Transfer
to Supreme Court Denied
October 31, 2017.

Bryan T. White, Independence, for Respondents.

Jed D. Reeg, for Appellant.

Before Division Two: Edward R. Ardini, Jr., Presiding Judge, Karen King Mitchell, Judge and Anthony Rex Gabbert, Judge

EDWARD R. ARDINI, JR., JUDGE

Concorde Career Colleges, Inc., ("the College") appeals the Order of the Circuit Court of Jackson County denying the College's Application to Compel Arbitration in a case filed by Katherine Dolly ("Dolly") and Kiley Elliot ("Elliot") (collectively referred to as "the Students") against the

College. We reverse and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

In the summer of 2012, the Students, as part of their enrollment at the College, signed Enrollment Agreements containing an arbitration provision that is the focus of this appeal. The provision provided:

Any dispute arising from enrollment at [the] College, no matter how described, pleaded[,] or styled, shall be resolved by binding arbitration under the Federal Arbitration Act conducted before a single arbitrator by the American Arbitration Association ("AAA") at Kansas City, Missouri, under its Commercial Rules. The award rendered by the arbitrator may be entered in any court having jurisdiction.

In October 2015, Dolly and Elliot filed this action against the College alleging violation of the Missouri Merchandising Practices Act ("MMPA") (§ 407.010, et. seq),[1] fraudulent misrepresentation, and negligent misrepresentation. Two months later, the College filed an Application to Compel Arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq. Discovery was conducted and an evidentiary hearing was held.

At the evidentiary hearing, the Students, the admissions representatives who handled their enrollments, and a business office manager from the College testified. The trial court also received evidence of other legal actions initiated by the College in Missouri circuit courts against multiple other students who had signed enrollment agreements containing the same arbitration provision as well as a copy of the

---

1. All Missouri statutory citations are to the Revised Statutes of Missouri 2000 as supplemented.

stand-alone Arbitration Agreement later developed and used by the College.

Following the evidentiary hearing, the court issued its Order denying the College's application, stating that there were "dozens of instances where the [College] chose to not abide by their own arbitration agreement and filed suit against a student in the Circuit Courts of Missouri" and that the College "waived its right to invoke the arbitration clauses which it chose to ignore when it perceived it strategically advantageous to do so in the past." The College appeals.

Additional facts are set forth throughout this opinion as necessary.

## STANDARD OF REVIEW

■ "An appeal may be taken from ... [a]n order denying an application to compel arbitration made under section 435.355[.]" § 435.440.1. "The issue of whether arbitration should be compelled is a question of law subject to [de novo] review." *Dotson v. Dillard's, Inc.*, 472 S.W.3d 599, 602 (Mo. App. W.D. 2015) (citation omitted). We defer to the trial court's factual findings, and "all fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached." *Bowers v. Asbury St. Louis Lex, LLC*, 478 S.W.3d 423, 426 (Mo. App. E.D. 2015) (quoting Rule 73.01(c)).

■ Our analysis of whether arbitration should be compelled is as follows: First, we must "determine whether a valid arbitration agreement exists." Second, if a valid arbitration agreement exists, we must determine "whether the specific dispute falls within the scope of the arbitration agreement." Third, if a valid arbitration contract exists, and if the subject dispute is within the scope of the arbitration provision, then we must

determine whether the arbitration agreement is subject to revocation under applicable contract principles.

*Frye v. Speedway Chevrolet Cadillac*, 321 S.W.3d 429, 434-35 (Mo. App. W.D. 2010) (citations omitted). "The elements required to form a valid contract in Missouri[,]" including an agreement to arbitrate, "are offer, acceptance, and bargained for consideration." *Id.* at 436 (citation and internal quotation marks omitted). If a valid arbitration agreement has been formed, a party may avoid arbitration if "grounds [ ] exist at law or in equity for the revocation of [the contract]." *State ex rel. Hewitt v. Kerr*, 461 S.W.3d 798, 806 (Mo. banc 2015) (citing 9 U.S.C. § 2); *see also* § 435.350. Such defenses include "fraud, duress, or unconscionability." *Hewitt*, 461 S.W.3d at 807 (citation omitted). Whether such grounds exist are "determined using the general principles governing contract law in Missouri." *Id.* at 806 (citation omitted). If the court's analysis concludes that an agreement to arbitrate has not been formed or that the agreement is otherwise revocable, then "the case may proceed in civil court." *Id.* (citation omitted).

## DISCUSSION

### I. Delegation Provision

■ The College claims in its first point on appeal that the trial court erred in denying its Application to Compel Arbitration because, the College argues, the parties contractually agreed to delegate issues relating to the existence, scope, and validity of the arbitration provision to an arbitrator. The trial court's Order contains no finding on the delegation issue. However, in light of the relief granted, it is evident that the trial court concluded that there was not an agreement to delegate so-called gateway issues of arbitrability. We agree.

"Arbitration is fundamentally a matter of contract[,]" so "[a] party cannot be required to submit to arbitration any dispute which he has not agreed to so submit." *50 Plus Pharm. v. Choice Pharm. Sys., LLC*, 463 S.W.3d 457, 460 (Mo. App. W.D. 2015) (citations omitted). Whether a particular dispute may be arbitrated "is a question for the courts and is to be determined by the contract entered into by the parties...." *Id.* (citation omitted). Generally, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" *Id.* (citation omitted).

However, when the issue is "*who* should decide arbitrability" rather than "*whether* arbitration should be compelled[,]" the presumption that a court should resolve any doubts in favor of arbitration is reversed. *Id.* at 461 (citation omitted). While "parties may agree to arbitrate even 'gateway' questions of arbitrability ... that would normally be for the court[,]" there must be "clear and unmistakable" evidence of such an agreement. *Id.* at 460-61 (citing *Rent–A–Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010)). The parties' intent is to be determined by the courts and may be evidenced by "a course of conduct demonstrating assent" or "an express agreement to do so." *Rent-A-Center*, 561 U.S. at 79-80, 130 S.Ct. 2772 (citation omitted).

The arbitration provision contained in the Enrollment Agreements relevant to this appeal is facially silent on the issue, and the reference in the provision that the arbitration proceedings would be conducted by the "American Arbitration Association ... under its Commercial Rules" does not constitute "clear and unmistakable" evidence of delegation to an arbitrator of disputes relating to formation and enforceability of the arbitration provision.[2] While the language in the relevant AAA Rules might be clear and unmistakable, that language is not recited in the agreement signed by the Students. This court has previously found that a general reference to the AAA Rules in an arbitration provision is not sufficient to establish an agreement to delegate questions of arbitrability to an arbitrator. *See 50 Plus Pharm.*, 463 S.W.3d at 461 (noting that a general reference to the "then Existing Commercial Arbitration Rules of the American Arbitration Association" in an agreement incorporated by reference into the principal contract between the parties was not the factual circumstances addressed or contemplated by the *Rent–A–Center* Court as dictating delegation of the gateway matter of the question of arbitrability to the arbitrator);[3] *cf. Dotson*, 472 S.W.3d at 606-08

2. The College is correct that the arbitration provision in the Enrollment Agreements declares that the proceedings would be governed by the AAA Commercial Rules. However, AAA Consumer Rule 1(a) states that the *consumer* rules apply where "the arbitration agreement is contained within a consumer agreement ... that specifies a particular set of rules other than the *Consumer Arbitration Rules.*" Private school enrollment agreements are specifically identified as an example of a consumer contract under the rule. Indeed, the College acknowledges that, despite reference to the Commercial Rules within the arbitration provision, it is the Consumer Rules that apply. Rule 14 of the AAA Consumer Rules

provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope[,] or validity of the arbitration agreement." The Commercial Rules contain a similar provision.

3. The College asserts that we are bound to follow the Eighth Circuit's decision in *Fallo*, where the court reviewed an arbitration clause in an enrollment agreement similar to the one at issue here and concluded that a delegation provision that incorporated by reference the AAA Rules clearly and unmistakably delegated issues of arbitrability. *Fallo v. High–Tech Institute*, 559 F.3d 874, 876 (8th

(holding that delegation provision *within* an arbitration agreement clearly and unmistakably provided for the arbitrator to determine arbitrability).[4] Accordingly, the trial court did not err in determining that the arbitration provision did not clearly and unmistakably delegate the authority to determine issues of contract formation and enforceability to the arbitrator.

## II. Admissibility of Evidence

Prior to addressing the College's arguments directed at the formation and enforceability of the arbitration provision, we must first consider its assertion that the trial court erred in admitting Exhibits 10 through 18 (and thus whether those exhibits may properly be considered in resolving formation and enforceability issues). The College alleges that the trial court improperly admitted (1) seven exhibits relating to circuit court actions initiated by the College against other students who had entered into enrollment agreements containing arbitration provisions identical to the Students (Exhibits 12 through 18),[5] (2) the deposition testimony of the College's current director of admissions (Exhibit 10), and (3) the Arbitration Agreement developed and used by the College subsequent to the Students' enrollment (Exhibit 11).

A trial court's admission of evidence is reviewed for abuse of discretion, *i.e.*, the ruling "is clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration." *Cox v. Kansas City Chiefs Football Club, Inc.*, 473 S.W.3d 107, 114 (Mo. banc 2015) (citation and internal quotation marks omitted). Even if the trial court abused its discretion, its order will not be reversed unless the error "materially affected the merits of the action." *Id.* (citation omitted).

## A. Scope of Evidentiary Hearing

The College first argues that none of the exhibits should have been admitted because they exceeded the scope of an evidentiary hearing under the Missouri Uniform Arbitration Act ("MUAA"). The MUAA provides that "if the opposing party denies the *existence* of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised[.]" § 435.355.1 (emphasis added). The College appears to argue for an exceedingly restrictive interpretation of this statute, inexplicably limiting the trial court to consider evidence narrowly, and apparently exclusively, targeted to the "existence" of an arbitration agreement.[6]

Cir. 2009). In *50 Plus Pharm.*, this Court specifically noted that we are not bound to follow federal district or circuit decisions, including *Fallo*, and that several other federal circuits have reached the opposite conclusion. *50 Plus Pharm.*, 463 S.W.3d at 461 n. 2 (citation omitted).

4. In contrast to the present case, the agreement in *Dotson* contained a very specific provision that clearly delegated to the arbitrator issues of contract formation and enforceability. The provision read:

Any dispute over a Legal Claim concerning this Agreement—the way it was formed, its applicability, meaning, enforcement, or any claim that all or part of this Agreement is void or voidable—is subject to arbitration under this Agreement.

472 S.W.3d at 601.

5. One agreement provided that arbitration would be conducted in Garden Grove, California. This difference is immaterial for purposes of this appeal.

6. The restrictive interpretation the College assigns to the word "existence" in the statute is revealed by its claim that the "existence" of the agreements was established when the parties stipulated to the authenticity of the Students' Enrollment Agreements and any additional evidence would be beyond the scope of section 435.355.1.

We view the College's interpretation of section 435.355.1 with skepticism, as it would significantly undermine the statute's purpose, which is to enable a court to determine if a valid and enforceable arbitration agreement exists. Regardless of our view of the merits of this argument, the College's objection at the evidentiary hearing was based on relevance and lack of foundation.[7] The College did not make an objection to the trial court based on section 435.355.1 and therefore such an argument has been waived. *See Dotson*, 472 S.W.3d at 608 n. 2 ("Generally, we do not review claims raised for the first time on appeal because we will not convict a trial court of error for an issue not presented for its determination." (citation and internal quotation marks omitted)).

### B. Relevance and Prejudice

 The College next argues that the exhibits were not relevant. Evidence "must be both logically and legally relevant to be admissible." *Cox*, 473 S.W.3d at 116 (citation omitted). "Evidence is logically relevant if it tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence, or if it tends to corroborate evidence which itself is rele-

vant and bears on the principal issue of the case." *Id.* (citation omitted). Evidence is legally relevant if "the probative value of the proffered evidence" outweighs "its prejudicial effect[.]" *Id.* (citation omitted).

### Other Court Actions Initiated by the College

At the evidentiary hearing, the College objected to the admission of seven exhibits showing that it had initiated circuit court actions against other students who had signed enrollment agreements containing an identical arbitration provision. The College argues that their conduct toward these other students was not relevant because those cases did not involve the specific parties and contracts at issue in this case.

 These exhibits are logically relevant to the claims that a valid agreement was never formed or, alternatively, was unenforceable. The College's actions against other students, despite use of the same arbitration language, is probative of whether there lacked mutuality of assent or a meeting of the minds relating to the arbitration provision and whether the agreement lacked adequate consideration because the obligation to arbitrate was not mutual.[8] *See, e.g., Motormax Fin. Servs.*

7. We need not address the College's foundational objection directed at the admission of the court filings against other students, as it is not raised on appeal. *See In re T.J.D.*, 186 S.W.3d 488, 494 (Mo. App. S.D. 2006) ("The only issues required to be determined on appeal are those raised in the points relied on." (citation omitted)).

8. Notwithstanding the legal actions it has brought against other students, the College responded below and on appeal that the arbitration provision was mutual and that the mutuality provided adequate consideration for the agreement. The College further contends that even if the arbitration obligation was deemed not to be mutual, the arbitration

provision was still valid because the entire enrollment agreement was supported by adequate consideration, *i.e.*, the College would provide an education in exchange for the Students' payment of tuition. *See Eaton v. CMH Homes, Inc.*, 461 S.W.3d 426, 434 (Mo. banc 2015) (stating "that mutuality is satisfied if there is consideration as to the whole agreement, regardless of whether the included arbitration clause itself was one-sided"). While the College is correct that an arbitration obligation can be based on consideration supporting the entire agreement, in the present case, the analysis does not end there. The Students argue that the College's promise to provide an education was illusory because the College retained the unilateral right to terminate

*Corp. v. Knight*, 474 S.W.3d 164, 171 (Mo. App. E.D. 2015), *abrogated on other grounds by Sanford v. CenturyTel of Mo., LLC*, 490 S.W.3d 717 (Mo. banc 2016) (holding that agreement to arbitrate lacked consideration and therefore was unenforceable because the promise to arbitrate was not mutual); *Greene v. Alliance Auto., Inc.*, 435 S.W.3d 646, 654 (Mo. App. W.D. 2014) (holding same). Lack of mutuality is also relevant to the Students' argument that the arbitration provision is unconscionable. *See, e.g., Eaton*, 461 S.W.3d at 434 ("Although a lack of mutuality of the obligation to arbitrate does not itself make an arbitration agreement invalid, lack of mutuality still is a relevant factor to be considered in answering the larger question of whether the agreement to arbitrate is unconscionable."); *Brewer v. Missouri Title Loans*, 364 S.W.3d 486, 494 (Mo. banc 2012) (finding arbitration agreement unconscionable in part because obligation to arbitrate was not bilateral).

 The College responds that their conduct against other students is irrelevant and that the arbitration provision is clearly mutual. However, the language in the Students' Enrollment Agreements did not expressly state that *both* the College and the Students are bound by its terms to arbitrate. This lack of specificity and the relevance of the mutuality determination to both the formation (mutual assent and adequate consideration) and enforceability (unconscionability) issues raised by the Students permits the court to "look outside the contract to determine the parties' intent." *J.H. Berra Constr. Co. v. City of Washington*, 510 S.W.3d 871, 874 (Mo. App. E.D. 2017) (citation omitted). "When intent or mental culpability must be proven, a party's actions toward others tending to demonstrate the intent with which the

party may have acted in the present case become relevant." *Brockman v. Regency Fin. Corp.*, 124 S.W.3d 43, 51 (Mo. App. W.D. 2004).

 The evidence of other lawsuits is also legally relevant. The case relied on by the College to argue that the evidence was unduly prejudicial and thus not legally relevant is distinguishable. In that case, the party seeking to admit evidence of other legal actions failed to establish the logical relevance of those suits. *See Radloff v. Penny*, 225 S.W.2d 498, 501-02 (Mo. App. 1949) (stating that evidence sought to be introduced in unlawful detainer action tried by jury involved different premises sought for different purposes (conversion into additional housing accommodations versus personal use and occupancy of the landlord)). Here, the evidence was logically relevant on the issue of whether the College was or intended to be bound by the arbitration provision, and we do not find that the trial court abused its discretion in admitting Exhibits 12 through 18.

## Current Arbitration Agreement

The College also alleges the trial court erred in admitting deposition testimony from the College's current director of admissions, Jeff Harris ("Harris"), and its current Arbitration Agreement. The College argued at the evidentiary hearing that this evidence was irrelevant because Harris was not the director of admissions at the time the Students enrolled and the later implemented Arbitration Agreement is different from the one signed by the Students during their enrollment. On appeal, the College adds that the evidence was not legally relevant and was unduly prejudicial because admission of subsequent remedial measures discourages "ef-

classes and entire programs. The trial court did not address the Students' argument and,

because we are remanding the case, we decline to address that issue now.

forts to clarify contractual obligations" and "perpetuat[es] any confusion caused by unclarified language in the contract." *Pastor v. State Farm Mut. Auto. Ins. Co.*, 487 F.3d 1042, 1045 (7th Cir. 2007) (citing Fed. R. Evid. Rule 407).

The testimony of the College's director of admissions and the College's current Arbitration Agreement were offered to support the Students' argument that the arbitration provision in the Students' Enrollment Agreement was unconscionable because, *inter alia*, the provision is difficult to understand by a consumer and not mutual. Unlike the arbitration provision in the Students' Enrollment Agreement, the new stand-alone Arbitration Agreement clearly states that the arbitration obligation is mutual, details the rights being waived by each party, and explains key terms. As stated *supra*, a lack of mutuality is relevant to issues of formation and enforceability. Moreover, evidence that an agreement is difficult to understand may be considered in determining whether it is enforceable. *See, e.g., Brewer*, 364 S.W.3d at 493 (finding that an arbitration agreement was unconscionable in part because it was "difficult for the average consumer to understand"). The testimony of Director Harris and the admission of the updated Arbitration Agreement were relevant to the court's analysis of these issues.

The College further argues that the prejudicial impact of the admission of the new Arbitration Agreement outweighs any probative value. We might agree with the College if Exhibits 10 and 11 were offered at trial to determine whether the College violated the MMPA or made fraudulent or negligent misrepresentations to the Students. However, they were not offered at a trial on the merits but instead at an evidentiary hearing narrowly aimed at the preliminary question of whether a valid arbitration agreement was formed and enforceable. Given the focus of the evidentiary hearing and, as previously explained, the logical relevance of the exhibits to the issues to be decided by the trial court, any alleged prejudice to the College was minimal and outweighed by their probative value. The trial court has broad discretion in the admission of evidence, and we cannot find that it erred in admitting Exhibits 10 and 11.

### III. Contract Formation and Enforceability

The College alleges in its second and third points on appeal that a valid arbitration agreement was formed and that no contract defenses were applicable, *i.e.*, the agreement was enforceable. In its third point, the College specifically argues that the trial court erred in concluding that the College had waived its right to enforce the arbitration provision.[9] We agree.

"Parties to an agreement may by their oral agreement or their conduct waive the provisions of a contract between them." *Crabby's Inc. v. Hamilton*, 244 S.W.3d 209, 214 (Mo. App. S.D. 2008) (citation omitted). "Whether a party has waived its right to arbitrate is determined on a case-by-case basis." *Gentry v. Orkin, LLC*, 490 S.W.3d 784, 789 (Mo. App. W.D. 2016) (citation omitted). "A party waives its right to arbitrate if it: (1) had knowledge of the existing right to arbitrate[,] (2)

9. The Students seemingly agree that the trial court's reliance on waiver in denying the Application to Compel Arbitration was in error, as they focus their arguments on other grounds relating to contract formation and enforceability. While there was a substantial record established in this case, as discussed later in this opinion, the lack of any findings by the trial court beyond the waiver issue requires us to remand to the trial court.

acted inconsistently with that right, and (3) prejudiced the party opposing arbitration." *Id.* (citing *Frye*, 321 S.W.3d at 445). Waiver is often found in cases that are litigated in court for a substantial period of time before one party requests that arbitration be compelled, resulting in prejudice to the opposing party. *See, e.g., id.* at 789-90; *Frye*, 321 S.W.3d at 445-46.

 A party's right to arbitrate is a matter of contract between the parties. *50 Plus Pharm.*, 463 S.W.3d at 460. Thus, it follows that in order for a party to waive this right, the inconsistent act committed by the party must prejudicially impact the other party to the particular agreement. The filing of lawsuits by the College against other students may have been conduct inconsistent with its contracts with *those* students. However, we are not able to discern, and the Students have not identified, how *they* were prejudiced by the College's conduct against those other students. Based on the record before us, the requirements of waiver have not been met.

Although we grant point III in part, the trial court's Order contains no specific findings on the Students' remaining arguments that no valid arbitration agreement was formed or, if a valid agreement was formed, that the agreement is unconscionable and therefore unenforceable.[10] "Factual issues remain relevant to determining these additional grounds raised by [the Students] in opposition to the [Application] to Compel." *A-1 Premium Acceptance v. Hunter*, WD 79735, 2017 WL 3026917, at *5 (Mo. App. W.D. July 18, 2017) (citing *Robinson v. Title Lenders, Inc.*, 364 S.W.3d 505, 518 (Mo. banc 2012)). "As the

fact-finder, the trial court should assess the evidence in this case and determine if the ... arbitration agreement is enforceable[,]" *Robinson*, 364 S.W.3d at 518.

## CONCLUSION

The trial court's Order denying the College's Application to Compel Arbitration is reversed and the matter is remanded for consideration of the additional grounds raised in opposition to the Application to Compel Arbitration, and for further proceedings consistent with this Opinion.

All concur.

---

10. The College argues that trial court's reliance on waiver in its Order implicitly evidences a finding that a valid agreement was formed between the parties. This is not clear from the Order and we will not assume such a finding. The trial court is in the best position to identify the findings, if any, it previously reached relating to contract formation when it addresses the remaining grounds in opposition to the Application to Compel Arbitration on remand.